In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1137

IN RE: TEKNEK, LLC,

*Debtor*,

PHILLIP D. LEVEY, TRUSTEE,

*Plaintiff-Appellant*,

*v.*

SYSTEMS DIVISION, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 5229—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED SEPTEMBER 23, 2008—DECIDED APRIL 29, 2009

Before BAUER, CUDAHY and WILLIAMS, *Circuit Judges*.

CUDAHY, *Circuit Judge.* Systems Division, Inc. (SDI) obtained a judgment for patent infringement against Teknek LLC (Teknek) and Teknek Electronics (Electronics) in a district court in California. While the patent suit was pending, Teknek and Electronics' sole shareholders, Jonathan Kennett and Sheila Hamilton, created Teknek Holdings (Holdings) and proceeded to funnel both compa-

nies' assets into Holdings, leaving Teknek and Electronics insolvent. From here, matters get complicated. After SDI won its patent suit, it successfully moved the federal district court in California to add Kennett, Hamilton and Holdings to the judgment as defendants on an alter ego theory. Meanwhile, Teknek (but not Electronics) filed for bankruptcy in the Northern District of Illinois, and the bankruptcy trustee brought an adversary proceeding against Hamilton, Kennett and other successor entities of Teknek (but not Electronics or Holdings) alleging, among other things, that Hamilton and Kennett were Teknek's alter egos and seeking to recover the SDI judgment on behalf of the estate. The question presented by this appeal is whether SDI's collection action against Kennett, Hamilton and Holdings (the alter egos) may be enjoined so that the trustee can pursue its claim for the same judgment against Kennett and Hamilton. The bankruptcy court held that SDI's claims against the alter egos were "property of the estate" under § 541 of the Bankruptcy Code, 11 U.S.C. § 541, and therefore that the trustee had an exclusive right to bring those claims. The bankruptcy court accordingly enjoined SDI from collecting its patent judgment outside of bankruptcy. On appeal, the district court found that SDI's alter ego claims were neither property of the estate nor related to the bankruptcy proceeding. It therefore ruled that SDI's claims were not subject to the automatic stay under § 362, nor to an injunction under § 105 of the Bankruptcy Code. We agree with the district court and therefore hold that it properly vacated the bankruptcy court's injunction.

**I.**

SDI makes "clean machines," which remove small particles from flat materials such as film, lamination and electronic circuitry. Teknek and Electronics were SDI's competitors. More precisely, Teknek was a U.S. distributor of clean machines made by Electronics, Teknek's Scottish affiliate. Teknek and Electronics were separate entities, both controlled by Hamilton and Kennett, Scottish citizens. Kennett owned 85 percent of the shares in both companies, and Hamilton owned the other 15 percent. In February 2000, SDI filed its patent infringement suit against Teknek and Electronics. A few months later, Kennett and Hamilton created Holdings. Between 2003 and 2004, Electronics transferred £5 million to Holdings, as well as manufacturing equipment and a building. Electronics received no consideration for these asset transfers. In contrast to Electronics' relatively large asset holdings, Teknek's assets were limited to some office furniture, computers, a car and Teknek's receivables. These assets ultimately were transferred to Holdings as well. Much was made at argument and by both the California federal district court and the federal district court in Chicago (which acquired jurisdiction through the bankruptcy filing) about whether Teknek's assets were transferred directly to Holdings or first to Electronics. Because this issue is not material to the outcome, we do not revisit it here.

Following a jury trial on its patent claims, SDI won a judgment of $3.77 million against Teknek and Electronics in August 2004. The defendants' liability on the judgment

was joint and several. But by this point, Teknek and Electronics were judgment proof, so SDI moved the California federal court to add Kennett, Hamilton and Holdings as defendants based on an alter ego theory. The California court granted SDI's motion, finding that Kennett and Hamilton were alter egos of both Teknek and Electronics under California law, because they had transferred assets from Teknek and Electronics to Holdings with intent to defraud SDI. The California federal court's holding meant that the alter egos were directly liable for the patent judgment. The court also found that Holdings was a mere continuation of Electronics and therefore liable for Electronics' debt to SDI as a successor corporation. The alter ego finding was later affirmed by the Federal Circuit. Meanwhile Teknek filed its Chapter 7 petition in the bankruptcy court for the Northern District of Illinois. SDI appeared in the Illinois bankruptcy proceeding and filed a notice of its claim. Teknek's bankruptcy trustee filed an adversary proceeding in the bankruptcy case, asserting claims for, *inter alia*, fraudulent transfers and breach of fiduciary duty against Kennett and Hamilton. The trustee's complaint also seeks to hold Kennett and Hamilton personally liable for Teknek's obligation on the judgment to SDI based on an alter ego theory. This claim is identical to SDI's claim, except that Holdings is not a defendant in the trustee's complaint and the trustee seeks to reach the alter egos through Teknek only, rather than through Electronics or by virtue of the California federal court's order that the alter egos, too, are judgment debtors on the patent claims.

SDI and the alter egos came close to reaching a settlement outside the bankruptcy proceeding in the spring of 2007. In May of that year, Kennett and Hamilton filed a motion to stay the trustee's adversary proceeding in the bankruptcy court so that they could complete their settlement with SDI. The bankruptcy court denied the motion. Then in June, the bankruptcy judge entered the preliminary injunction that is the subject of this appeal.

The bankruptcy court's injunction order does not carefully distinguish between Teknek and Electronics. Although it acknowledges that SDI's patent suit was against both Teknek and Electronics, and that SDI sought to add Hamilton, Kennett and Holdings as defendants on an alter ego theory, the bankruptcy court states that the judgment in the patent suit is only against "the Debtor." The bankruptcy court's order omits any mention at all of Electronics' joint and several liability on the patent judgment. Also omitted is the California district court's alter ego ruling that Kennett, Hamilton and Holdings are equally on the hook for the liability of *Electronics* as they are for the liability of the *debtor*. The order indicates that the *debtor* is the only entity directly liable for the patent judgment. If this were the case, SDI would have been properly enjoined from pursuing its claim, as it would have been a claim against the debtor reserved for the bankruptcy trustee. But this is not the case. Nevertheless, neither Electronics nor the alter egos are mentioned as being directly liable. The bankruptcy court's injunction order concludes misleadingly that "the [California] District Court's determination that Hamilton, Kennett and Holdings could be properly added as defendants

to the SDI Judgment and pursued for collection of the same was based on SDI's claims that (a) Hamilton and Kennett were the alter egos *of the Debtor*; (b) that Hamilton and Kennett caused the transfer *of the Debtor's* assets with the actual intent to defraud SDI; (c) that the assets were transferred for no consideration; and (d) that such transfers were intended to result *in the Debtor's* insolvency."

Because of the bankruptcy court's injunction, a settlement conference scheduled for July 2007 between SDI and the alter egos in California was canceled. In August, the trustee filed his own settlement motion in the Illinois bankruptcy court. In October the bankruptcy court entered an order finding that SDI's proceedings in California were adversely affecting the trustee's attempts to settle the case. Then the California federal court issued a sanctions order purporting to nullify the bankruptcy court's preliminary injunction and to enjoin the debtor, Electronics and the alter egos from transferring any assets. SDI appealed the bankruptcy court's preliminary injunction order to the district court for the Northern District of Illinois.

The district court in Chicago vacated the preliminary injunction, finding that the bankruptcy court lacked jurisdiction to enjoin SDI's settlement with the alter egos. The district court concluded that the automatic stay, 11 U.S.C. § 362, did not extend to SDI's claim. The court reasoned that SDI's claim was personal to it and independent of any claim a hypothetical general creditor could have brought against Teknek. Therefore the claim

was not property of the estate, and not covered by the automatic stay. "SDI seeks to collect its patent infringement judgment directly from Electronics, Holdings, Kennett, and Hamilton. . . . Electronics, Holdings, Kennett, and Hamilton are directly liable to SDI for the patent infringement judgment, and neither Teknek nor any claimant or creditor has any interest in that judgment. Thus, SDI's claims are personal and do not belong to the estate." *In re Teknek, LLC*, No. 07 C 5229, 2007 WL 4557813, at *7 (N.D. Ill. Dec. 21, 2007).

The district court in Chicago then acknowledged that, even if not property of the estate, SDI's claim may be within the bankruptcy court's "related-to" jurisdiction under 28 U.S.C. § 1334(b). The court concluded however that SDI's claim was not "related to" the bankruptcy case, because the "harm" SDI suffered was patent infringement—a harm no other creditor could claim—and because allowing SDI to collect from the non-debtors on the patent judgment would not prevent the trustee from also pursuing fraudulent transfer claims on behalf of the debtor's estate. 2007 WL 4557813, at *8, *10. Because the district court in Chicago agreed with the California federal court's finding that Teknek had transferred all of its assets directly to Holdings, instead of to Electronics, the court also concluded that there was no need for the bankruptcy court to untangle Teknek's assets from Electronics' assets, obviating that basis for related-to jurisdiction. The court also focused on the fact that SDI was Teknek's only major creditor: allowing SDI to settle its claim outside bankruptcy would not impair the recovery of a larger class of creditors, so the primary function of the trustee—to

maximize recovery on behalf of creditors as a whole—was not implicated. *Id.* at *8.

Further, the district court found there was no indication the alter egos would not be able to satisfy both SDI's claim and any fraudulent transfer claims the trustee brought on behalf of the estate. *Id.* at *12. As a practical matter, then, the court found that allowing SDI to control the settlement would not derail the bankruptcy proceedings. We agree with most of these conclusions, though, as will appear, the fact that the underlying harm suffered by SDI was patent infringement does not, by itself, make it a claim no other creditor could assert. By such logic, all creditors' claims would be personal to the specific creditor: a supplier's claim for payment on supplies would be deemed personal because no other creditor could claim payment for the same supplies; an employee's claim for his back pay would be personal to the extent that no other employee could claim back pay for that employee's hours worked. If all such claims were "personal," no creditor would have to wait in line behind the bankruptcy trustee to assert her claims. With such segregation of claims, the bankruptcy system would collapse. What is significant about SDI's patent infringement claim is not that it is for patent infringement; instead significance lies in SDI's reduction of the claim to judgment against both the debtor *and an independent non-debtor*, Electronics. It is Electronics' joint and several liability that makes SDI's claim special. Because of Electronics' independent liability on the judgment, we also do not find it significant whether Teknek transferred assets first to Electronics and then to Holdings or directly

to Holdings—either way, Electronics' independent liability remains. For the same reasons, we do not put much weight on the fact that SDI is the sole creditor in the bankruptcy case.

The Illinois federal district court also found that "the equities counsel against the bankruptcy court's exercise of jurisdiction." *Id.* at *13. This seems to be a species of abstention rather than further support for the court's holding regarding the absence of related-to jurisdiction. In this respect, the district court relied on *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65–66 (2d Cir. 1986), for its conclusion that wrongdoers cannot take advantage of the bankruptcy jurisdiction to avoid paying a judgment against them. The court found that Kennett, Hamilton and Holdings had used "complicated machinations to avoid paying a judgment." *In re Teknek*, 2007 WL 4557813, at *13. "Bankruptcy procedures cannot be used to achieve this end, and the bankruptcy court thus lacked jurisdiction." *Id.* Yet *Teachers* did not explicitly address the bankruptcy court's related-to jurisdiction. Its decision was based on the bankruptcy court's "general equity powers under 11 U.S.C. § 105." 803 F.2d at 65. *Teachers* also preceded this court's decision in *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), which plainly finds that bankruptcy jurisdiction may exist even where it enjoins a creditor from collecting from non-bankrupt co-defendants who have acted in bad faith. *See Fisher*, 155 F.3d at 880.

Following the Illinois district court's decision, the alter egos paid SDI in full satisfaction of the judgment against them. The trustee's appeal of the district court's order

vacating the bankruptcy court's preliminary injunction is now before us.

## II.

There is no dispute that if SDI were trying to collect its patent judgment from Teknek, the debtor, it would be barred by the terms of the § 362 automatic stay. But SDI also has a judgment on the same claim against Electronics. Electronics' liability is joint and several with that of the debtor and, importantly, Electronics is directly liable to SDI. A further wrinkle, however, is that Electronics, like Teknek, is insolvent. SDI addressed this problem by seeking to have Kennett, Hamilton and Holdings added to the patent judgment as additional judgment debtors. The California federal court obliged, holding that Kennett, Hamilton and Holdings were also jointly and severally—and directly—liable for the entire patent judgment, because they were the alter egos of both Teknek and Electronics. SDI's "claim" is therefore in the nature of a collection action—this "claim" has already been reduced to judgment against not merely the debtor, but also the four non-debtors, Electronics, Kennett, Hamilton and Holdings. SDI argues that it can reach the alter egos directly because of this judgment, and, in any event, that it can reach the alter egos via Electronics on a veil-piercing theory. At the same time, the trustee argues that it can reach the alter egos via Teknek and collect on SDI's judgment on behalf of the estate because that judgment is a debt the alter egos also owe to the debtor. This is because, in addition to looting

Electronics, the alter egos also looted the debtor. The alter egos are therefore liable to the debtor for the SDI judgment because of their responsibility for the debtor's inability to repay it. In essence, then, both SDI and the trustee have a claim against the alter egos, but only one of them can receive satisfaction, because the patent judgment can only be recovered once.

To determine what entity may exercise this right of satisfaction against the alter egos, it is necessary to consider the kinds of claims that may be brought only by the trustee in bankruptcy. The purpose and duty of the trustee is to gather the estate's assets for pro rata distribution to the estate's creditors. *See Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1352 (7th Cir. 1987). In aid of that duty, and as discussed in detail below, the trustee has the sole right and responsibility to bring claims on behalf of the estate and on behalf of creditors as a class—so-called "general" claims. But the trustee's right to bring claims on behalf of creditors is not infinite. Individual creditors retain the right to bring "personal" claims that do not implicate the trustee's purpose. The distinction between "general" and "personal" claims ensures that the trustee will be able to fulfill the purpose of the bankruptcy laws without allowing the bankruptcy jurisdiction to swallow claims only tangentially related to the debtor. *See Fisher*, 155 F.3d at 880 ("The trustee, acting on behalf of the estate or the creditors as a whole, obviously may not roam around collecting whatever property suits her fancy. Her task instead is to recover and manage the 'property of the estate,' . . .").

As for the kinds of claims reserved for the trustee, first, the trustee has the sole responsibility to represent the estate by bringing actions on its behalf. *Fisher*, 155 F.3d at 879 (citing, *inter alia*, 11 U.S.C. § 323). In this respect, the bankruptcy estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. The estate includes any action a debtor corporation may have "to recover damages for fiduciary misconduct, mismanagement or neglect of duty," and the trustee succeeds to the right to bring such actions. *Koch*, 831 F.2d at 1343–44. Second, the trustee has creditor status under 11 U.S.C. § 544 and is the only party that can sue to represent the interests of the creditors as a class. *Koch*, 831 F.2d at 1342–43; *see also Matter of Kaiser*, 791 F.2d 73, 76 (7th Cir. 1986). However, the trustee has no standing to bring "personal" claims of creditors, which are defined as those in which the claimant has been harmed and " 'no other claimant or creditor has an interest in the cause.' " *Fisher*, 155 F.3d at 879 (quoting *Koch*, 831 F.2d at 1348).

> "[A]llegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors. If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim. . . .
>
> "A trustee may maintain only a general claim. His right to bring a claim depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand, accrues to specific creditors."

*Fisher*, 155 F.3d at 879–80 (quoting *Koch*, 831 F.2d at 1348–49); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1280 (7th Cir. 1989) (holding that RICO claims were personal, and plaintiffs were therefore entitled to sue on their own, because their injuries were distinct from the injuries to creditors in general resulting from the diversion of corporate assets); *see also Steinberg v. Buczynski*, 40 F.3d 890, 891–92 (7th Cir. 1994) (holding that the trustee could not bring a claim against sole shareholders of bankrupt corporation where shareholders had not looted or otherwise injured the corporation). "The equally valid mirror-image principle is that a single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner." *Koch*, 831 F.2d at 1349 (citing, *inter alia*, *Delgado Oil Co., Inc. v. Torres*, 785 F.2d 857, 861 (10th Cir. 1986)); *see also In re MortgageAmerica Corp.*, 714 F.2d 1266, 1277 (5th Cir. 1983) (holding that a fraudulent transfer claim against a corporate debtor's control person belongs to the corporate debtor, not to specific creditors); *Dana Molded Prods., Inc. v. Brodner*, 58 B.R. 576, 580–81 (N.D. Ill. 1986) (holding that a judgment creditor lacked standing under RICO to bring a personal claim for bankruptcy fraud committed *against the corporation itself* in an attempt to hinder creditors generally).

To determine whether an action accrues individually to a claimant or generally to a corporation, then, we must look to the injury for which relief is sought. We must consider whether that injury is "peculiar and personal to the claimant or general and common to the corporation

and creditors." *Koch*, 831 F.2d at 1349. In making this distinction it is helpful to compare the facts of the leading cases. In *Koch*, for instance, we found that a group of oil companies' claims against a debtor's fiduciaries were general claims. The oil companies had regularly exchanged petroleum products with the debtor, Energy Cooperative, Inc. (ECI). 831 F.2d at 1340. ECI, as debtor-in-possession, brought preference actions against the oil companies, and also sued its member-owners, who were regional agricultural cooperatives that had formed ECI to ensure a steady supply of petroleum products for their agricultural businesses. *Id.* ECI alleged that the member-owners had breached their fiduciary duties by preventing ECI from remedying breaches of contract and by causing ECI to take other actions contrary to its best interests. *Id.* ECI's suit sought to hold the member-owners liable for all of ECI's debts under a "veil-piercing " theory. ECI's Chapter 11 reorganization case was later converted to a Chapter 7 liquidation, and a trustee was appointed who continued pursuit of ECI's lawsuits in bankruptcy. The oil companies then brought their own suit seeking a declaration that the member-owners were ECI's alter egos and that ECI was solvent when it filed its bankruptcy petitions, such that the oil companies were entitled to recover from the member-owners whatever amounts the bankruptcy trustee recovered from the oil companies in its preference actions. 831 F.2d at 1341. The district court found that the oil companies had raised essentially the same allegations as those made by the trustee in bankruptcy. *Id.* We agreed. The oil companies' complaint alleged that they were

injured only because of the member-owners' misuse of ECI and of ECI's corporate form, and that the oil companies were entitled to recover from the member-owners only due to the member-owners' manipulation of ECI to the plaintiffs' detriment. 831 F.2d at 1349.

> The injury alleged by the oil companies, it can be clearly seen, is to the corporation directly and to the oil companies indirectly. The trustee's complaint, as well, underscores that the debtor is a victim of the Member-Owners and has been harmed directly. The oil companies are only indirect or secondary victims; they have alleged nothing about their detrimental position that is peculiar and personal to them and not shared by ECI's creditors.

*Id.* Therefore, the oil companies' claim was general and could be pursued only by the trustee in bankruptcy.

In *Fisher*, by contrast, we found that a group of creditor-investors' fraud claims against a debtor's agents accrued to the creditor-investors personally. 155 F.3d at 877. In *Fisher*, the corporate debtor, Lake States, was a bogus commodities business that the individual debtor, Thomas Collins, and a group of accomplices had used as a "bucket shop," similar to a Ponzi scheme. After Collins' fraud was detected, he and Lake States were forced into bankruptcy. At the time of their bankruptcy filing, Lake States had only about $2 million in assets, not enough to satisfy its outstanding investor debt of about $64 million. In addition to the trustee's claims against the non-debtor accomplices to recover on behalf of the estate, a group of Lake States investors sought to bring securities, com-

modities and common law fraud claims outside the
bankruptcy proceeding against the same non-debtor
accomplices. To the extent that this group of creditor-
investors sought to sue the accomplices merely to
recover debts that arose out of the creditor-investors'
transactions with Lake States, we held that they stood in
the same position as the rest of the investors, "pursuing
identical resources for redress of identical, if individual,
harms." 155 F.3d at 881. Unlike in *Koch*, however, we
found that the creditor-investors' fraud claims were not
the same as those available to the trustee, even though,
if the creditor-investors were allowed to pursue their
claims, "there might be nothing left in the defendants'
coffers from which the bankrupt's estate could recover."
*Fisher*, 155 F.3d at 881 (discussing *Bankers Trust Co. v.
Rhoades*, 859 F.2d 1096 (2d Cir. 1988)). In this respect, we
quoted approvingly the Second Circuit's holding in
*Bankers Trust Co.*: "'[I]f [the creditor] Bankers was injured
by [the non-debtor] defendants' acts, . . . it has standing
to bring a RICO claim, regardless of the fact that a bank-
rupt BAC might also have suffered an identical injury
for which it has a similar right of recovery.'" *Fisher*, 155
F.3d at 881 (quoting *Bankers Trust Co.*, 859 F.2d at 1101).
Accordingly, in *Fisher* we held that the investor-creditors
had independent, personal claims for fraud against the
debtors' accomplices, even though their claims arose
from the accomplices' misuse of the funds they had
invested in Lake States. In finding that the investor-credi-
tors' fraud claims were personal to them, we reasoned
that fraud inflicts a separate and distinct injury on its
victims, one that is inflicted directly on those victims by

its perpetrators, and that sometimes may be redressed by punitive damages. The creditor-investors' injuries from that fraud may not have been fully measured by the debts the accomplices owed to Lake States for the misuse of the investors' funds. Therefore we held that the creditor-investors should be allowed to bring their fraud suits—after the bankruptcy proceedings concluded—to recover any shortfall in their pro rata share as general creditors, as well as any individualized damages not compensated by their pro rata share. 155 F.3d at 883.

Nevertheless, in *Fisher* we upheld the bankruptcy court's jurisdiction to enjoin the creditor-investors' fraud claims because those claims were so closely related to the bankruptcy proceedings. We explained that in limited circumstances the trustee may temporarily block claims that are not property of the estate by petitioning the bankruptcy court to enjoin such claims, if they are sufficiently "related to" claims on behalf of the estate. 155 F.3d at 882 (citing 28 U.S.C. § 1334(b)). "The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include 'suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate,' or 'the allocation of property among creditors.'" 155 F.3d at 882 (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir. 1994), and *In re Mem'l Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir. 1992)). To protect this jurisdiction, the bankruptcy court may issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a); *Fisher*, 155 F.3d at 882. Thus, even though the investor-creditors' fraud claims were personal and distinct from claims that could be brought by other creditors, they were so related to the bankruptcy proceeding that, if not temporarily enjoined, they would have derailed those proceedings' efforts to recover for the class of creditors as a whole.

The case *sub judice*, however, is distinct from both *Koch* and *Fisher*. In both of those cases, the creditors' claims against the non-debtor fiduciaries depended on the non-debtor's misconduct *with respect to the corporate debtor*. In *Koch*, the oil companies sought to hold the member-owners liable based on their alleged breach of fiduciary duties to the debtor, ECI, 831 F.2d at 1340, and in *Fisher*, the creditor-investors' fraud claims were based on the accomplices' looting of the debtor corporation in which the plaintiffs had invested, 155 F.3d at 881. In this regard, general claims and claims that are "related to" the bankruptcy seemingly always involve transfers *from the debtor* to a non-debtor control person or entity. *See, e.g.*, *In re MortgageAmerica Corp.*, 714 F.2d at 1275. To be sure, the case before us involves those facts as well—Teknek transferred all of its assets to the non-debtor Holdings, which is controlled by Kennett and Hamilton—but it also involves a separate non-debtor, Electronics, that is directly liable to SDI on the patent judgment without regard to the debtor's liability. SDI has already proven to a jury that Electronics inflicted an independent injury against it, and SDI has proven to the California district court that the alter egos inflicted an independent injury against Electronics—they looted Electronics and left it a

shell—without regard to any injury Teknek inflicted on SDI, or any injury the alter egos inflicted on Teknek. SDI's claim against the alter egos does not depend on the alter egos' misconduct with respect to the debtor. SDI has equal recourse against the alter egos because of the injury suffered by Electronics. This distinction makes our case more like *In the Matter of Johns-Manville Corp.*, 26 B.R. 405 (Bankr. S.D.N.Y. 1983), where the debtor and the non-debtors were sued as joint tortfeasors in asbestos product liability suits. The non-debtor co-defendants were not alter egos of the debtor, but rather were independent companies whom the plaintiffs alleged were jointly liable with the debtor for asbestos injuries. 26 B.R. at 407. Electronics is like the co-defendants in *Johns-Manville*. The presence of Electronics and its involvement in the underlying patent suit distinguishes this case from *Fisher*, where we held that "[w]hile the Apostolou Plaintiffs' claims are not 'property of' the Lake States estate, it is difficult to imagine how those claims could be more closely 'related to' it. They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy." 155 F.3d at 882. Here, though SDI's claims involve the same pool of money as the trustee's claims, and that money is in the possession of the same defendants (the alter egos), the claims are not based on the same acts. The alter egos looted both Teknek and Electronics. Those are separate acts, which caused separate injuries to two separate companies, only one of which is in bankruptcy.

The fact that the same alter egos controlled both Electronics and Teknek is not sufficient to bring SDI's claim against Electronics under the umbrella of the bankruptcy proceeding. With respect to the alter egos, this case is akin to "the more common case" referred to in *Fisher* where a creditor of a bankrupt files a claim against an insurer or guarantor of the bankrupt and is allowed to proceed because the suit is " 'only nominally against the debtor because the only relief sought is against his insurer,' guarantor, or other similarly situated party." *Fisher*, 155 F.3d at 882–83 (quoting *In re Hendrix*, 986 F.2d 195, 197 (7th Cir. 1993)). The alter egos in the case before us are like an insurer or guarantor. As in *Hendrix*, now that SDI's claim has been reduced to judgment, its collection action is only nominally against Electronics and Teknek, because the only relief sought is against the non-debtor alter egos. *See Hendrix*, 986 F.2d at 197 ("[A]s to whether such an injunction extends to a suit only nominally against the debtor because the only relief sought is against his insurer, the cases are pretty nearly unanimous that it does not.") (collecting cases).

A final distinguishing characteristic of this case is the fact that SDI is the debtor's only major creditor. Allowing SDI to settle its claim outside of bankruptcy therefore will have no effect on a larger class of creditors, and in this sense it will not "derail the bankruptcy proceedings." *Fisher*, 155 F.3d at 883. We do not make too much of this distinction, however. If not for the presence of Electronics, an independent non-debtor that is directly liable to SDI for the patent judgment, we would have been required under *Fisher* to find that SDI's claim was

so related to the bankruptcy case that it could be properly enjoined by the bankruptcy court. As a procedural matter, the lack of other creditors would have served better as the basis for a motion to dismiss the bankruptcy proceeding than as the basis for the jurisdictional argument SDI makes here. *See In re Am. Telecom Corp.*, 304 B.R. 867, 873 (Bankr. N.D. Ill. 2004) (dismissing Chapter 7 case where debtor's two shareholders had filed bankruptcy petition only to avoid paying a judgment to the debtor's sole creditor, because such a petition "does not adequately implicate any of the policies that the U.S. Bankruptcy Code was enacted to serve"). SDI never filed such a motion. Still, the absence of other creditors is relevant. The trustee's "paramount duty" in Chapter 7 is to marshal the estate's assets for a pro rata distribution to all creditors. *See Koch*, 831 F.2d at 1352. To the extent that there is no larger creditor class, that duty will not be vindicated, and there is less of a principled basis for requiring a claim to be brought by the trustee rather than by the individual creditor.

## III.

Before concluding, we address a matter in tension with our jurisdiction. While this appeal was pending before us, the trustee filed a motion in the bankruptcy court to compromise all of his claims with Teknek's alter egos. On March 13, 2009, as our opinion was about to be issued, the bankruptcy court below issued a memorandum opinion purporting to grant the trustee's motion, *In re Teknek, LLC*, No. 05 B 27545, ___ B.R. ____, 2009 WL

648598 (Bankr. N.D. Ill. Mar. 13, 2009), notwithstanding this appeal, and in apparent violation of the ancient stricture that, when a case is on appeal, all lower courts lose jurisdiction over it and related matters. *In the Matter of Statistical Tabulating Corp., Inc.*, 60 F.3d 1286, 1289 (7th Cir. 1995) (citing *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). The purpose of this rule is to avoid the confusion of placing the same matter before two courts at the same time and to preserve the integrity of the appeal process. *Whispering Pines Estates, Inc. v. Flash Island, Inc.*, 369 B.R. 752, 757 (B.A.P. 1st Cir. 2007). The situation before us is a perfect example of why this rule matters.

We came across the bankruptcy court's opinion approving settlement quite by chance; none of the parties brought it or the settlement to our attention. We immediately issued an order to the parties to address what effect this ruling might have on our appeal and to show cause why they should not be sanctioned for proceeding in apparent disregard of our jurisdiction. The alter egos did not respond to our order. They are not parties to this appeal, so perhaps that failure is excusable. SDI responded to our order with a tersely worded statement that it had no involvement in the settlement. Teknek responded with a slightly less terse filing, asserting that the settlement had no effect on our jurisdiction, because it involved the settlement of claims "separate and apart from the claims at issue in the present appeal." The trustee's response to our order to show cause provides the most context for the proceedings that have taken place in the bankruptcy court since the filing of this appeal. The trustee

explains that, although he believes *his* settlement does not compromise our jurisdiction, he has previously been "vigilant in his defense of this Court's jurisdiction" in response to SDI's own attempts to impair our ability to decide this appeal. The trustee reports that he has opposed both summary judgment by SDI—seeking dismissal by the bankruptcy court of the trustee's action now on appeal—as well as SDI's attempt to withdraw its claim from the bankruptcy, all on grounds that our appeal deprived the bankruptcy court of jurisdiction. These related facts only now come to our attention, SDI not having mentioned them in response to our order to show cause. These facts provide grounds for sanctioning SDI, as well as giving the trustee credit for getting the jurisdiction question right early on, though he has clearly gotten it wrong since then.

We cannot fathom how the bankruptcy court could lack jurisdiction to dismiss SDI yet retain jurisdiction to approve the settlement between the trustee and the alter egos. Indeed, as the trustee himself pointed out to the bankruptcy court in his response to SDI's motion to withdraw its claim, "[u]ntil the Seventh Circuit has ruled on the Trustee's appeal, this Court should take no action that would alter the status quo or result in any legal prejudice to the Estate's claims." Yet that is exactly what the bankruptcy court did when it approved the trustee's settlement. The trustee cannot have it both ways.

To be clear, while the trustee's settlement does not directly and specifically address the issues immediately

before us, it purports to deal with matters that are integral to this appeal. The trustee brought the injunction action now on appeal only so that he could pursue SDI's claim against the alter egos on behalf of the bankruptcy estate. But the trustee's settlement purports to compromise all of the trustee's claims against the alter egos, leaving little if anything for the trustee to pursue on that score. The trustee now focuses on other relief he might have obtained from SDI had he won this appeal (relief that is largely ignored in his brief): damages for SDI's violation of the automatic stay and a turnover of the settlement proceeds SDI received from the alter egos. But the trustee mitigated his damages by settling with the alter egos outside our jurisdiction; any turnover of SDI's settlement proceeds would have been followed quickly by a return of those proceeds to SDI, the sole creditor in this case. Thus, although the matter on appeal is technically a separate adversary proceeding from the matter at issue in the trustee's settlement, the relationship is so close that it is obvious that the bankruptcy court lacked jurisdiction to approve the settlement. Therefore, the bankruptcy court's purported approval of the settlement is null and void. Moreover, because the trustee is required to get the bankruptcy court's approval before settling claims, the settlement itself is apparently of no effect. *See* Fed. R. Bankr. P. 9019; *see also, e.g.*, *Yorke v. N.L.R.B.*, 709 F.2d 1138, 1147 (7th Cir. 1983). Because the settlement does not purport to settle the issues directly before us, however, and because the settlement has not been validly approved by the bankruptcy court, the case before us is not moot and we retain jurisdiction to

decide it. *See In re Markarian*, 228 B.R. 34, 48 (B.A.P. 1st Cir. 1998) ("Since the Bankruptcy Court had no jurisdiction to approve the parties' compromise and enter dismissal, those orders are void; therefore, a case or controversy still existed when the Panel issued its October 28, 1998 Order.").

One final issue remains, and that is proper sanctions. We think a sanction of $5,000 against the trustee, payable to the court, for entering the rogue bankruptcy settlement at issue here is sufficient to deter similar actions in derogation of this court's jurisdiction in the future, while recognizing that the trustee acted correctly in opposing SDI's various motions below. We sanction SDI the same amount for its abortive attempts to extricate itself from the bankruptcy, again in apparent disregard of our exclusive jurisdiction over these matters. We leave to the bankruptcy court in due course the decision whether to sanction the alter egos, who are not before this court.

The district court's holding that SDI's claim is not property of the Teknek estate or related to the bankruptcy proceeding is AFFIRMED, and the district court's vacation of the preliminary injunction order is also AFFIRMED.