In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3790

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JEFFREY P. TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 11 CR 00112 — **Rudy Lozano**, *Judge.*

ARGUED MAY 22, 2015 — DECIDED AUGUST 6, 2015

Before EASTERBROOK, WILLIAMS, and HAMILTON, *Circuit
Judges*.

WILLIAMS, *Circuit Judge.* Jeffrey Taylor appeals several
special conditions of the probation he received after his sex-
ually explicit displays on a web camera and conversations in
an internet chatroom with what he thought to be a thirteen-
year-old girl. We agree with him that the record does not
support a ban on viewing legal adult pornography. Adult
pornography did not facilitate or lead to Taylor's offense

here, and there is no evidence or finding that viewing otherwise legal pornography would increase the likelihood he would recidivate. In light of his use of his computer to attempt to contact a young teenage girl, however, we affirm the imposition of a condition that requires Taylor to make his internet-capable devices available for inspection, even without any reasonable suspicion that he has committed a new crime. Finally, we agree with Taylor that the special conditions as currently worded contain an overly broad complete ban on knowing contact with minors.

## I. BACKGROUND

Taylor's case has been before our court twice. During his most recent appeal, we summarized Taylor's offense conduct as follows:

> On August 2, 2006, Taylor entered an online chat room and began a conversation with "elliegirl1234." "Ellie" identified herself as a 13–year–old girl from Lafayette, Indiana. Taylor responded that he was 37 and from Logansport. The conversation quickly became graphic as Taylor described his physique and asked whether Ellie had engaged in sexual acts with her boyfriend. Taylor wanted to see Ellie [] masturbate in front of a webcam; he asked her whether she had a webcam, but she indicated that she did not. Taylor then turned on his webcam and masturbated in front of it so that Ellie could see.

> Taylor and Ellie conversed online on multiple occasions over the next two weeks. The conversations were always sexual in nature. On August 14 the conversation turned to arranging a meeting in person, and Taylor asked Ellie to fantasize about what would happen if the two met. Taylor expressed some concern about meeting in person because he "could go to jail." (In an earlier conversation, he had referred to Ellie as "jailbait.") During this online

> chat, Taylor masturbated a second time in front of his webcam so that Ellie could see.

> Ellie was not a 13–year–old girl but an online identity assumed by law-enforcement personnel working on a joint federal-state sting operation targeting child sex offenders. One of the investigators used a picture of herself from when she was 15 or 16 to help create the chat-room profile.

*United States v. Taylor*, 777 F.3d 434, 437 (7th Cir. 2015).

A jury convicted Taylor of violating 18 U.S.C. § 2422(b), although we overturned that conviction on appeal because his conduct did not constitute "sexual activity" under that statute. *United States v. Taylor*, 640 F.3d 255, 259-60 (7th Cir. 2011). The government then charged Taylor for the same conduct under a different statute, this time 18 U.S.C. § 1470, which punishes the transfer or attempted transfer of obscene material to a person under the age of sixteen years through a means of interstate commerce. A jury found Taylor guilty, and he received a sentence of three years of probation. (The judge recognized that Taylor had already served more than four years in custody on the overturned conviction, which exceeded the United States Sentencing Guidelines' recommendation for the new conviction.) The district court entered final judgment on August 15, 2012.

Taylor filed his notice of appeal the next day. On September 25, 2014, while his appeal was pending, he filed a motion asking the district court to modify the conditions of his probation. The district court granted in part and denied in part this request in an order dated December 22, 2014. That same day, Taylor filed a notice of appeal of the district court's order modifying the probation conditions. About a month later, we upheld Taylor's conviction on appeal. *United States v.*

*Taylor*, 777 F.3d 434 (7th Cir. 2015). Taylor contests in this appeal certain special conditions imposed in the December 22, 2014 order that modified the conditions of his probation.

## II. ANALYSIS

### A. Jurisdiction to Modify Special Conditions

An initial question is whether the district court had jurisdiction to enter the December 22, 2014 order modifying Taylor's conditions of probation. Because the district court's order came after Taylor filed his notice of appeal of his criminal conviction, one might wonder whether the district court had the authority to modify the conditions of Taylor's probation as it did. *See Griggs v. Provident Consumer Disc., Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."). The government and Taylor both took the position during briefing that the district court had the authority, by virtue of 18 U.S.C. § 3563(c), to modify Taylor's conditions of probation even though the appeal of his conviction was pending in our court. Nonetheless, we must fulfill our independent obligation to ensure that federal courts have subject-matter jurisdiction throughout the proceedings. *See United States v. Beard*, 745 F.3d 288, 291 (7th Cir. 2014).

The statute at issue, 18 U.S.C. § 3563(c), provides that "[t]he court may modify, reduce, or enlarge the conditions of a sentence of probation at any time prior to the expiration or termination of the term of probation … ." The question is whether the words "at any time" in the statute give the dis-

trict court the authority to enter the order modifying the conditions of probation when it did.

After the oral argument in this case, we considered an analogous situation in *United States v. Ramer*, 787 F.3d 837 (7th Cir. 2015) (per curiam). There, a defendant was convicted of conspiracy to commit wire fraud and sentenced to forty-two months' imprisonment and three years of supervised release. *Id.* at 838. One special condition of supervised release ordered the payment of restitution "at a rate of not less than $100 per month." The defendant filed an appeal, arguing that the restitution order should have been premised on his ability to pay. While briefing was taking place in our court, the district court amended its judgment to condition the defendant's restitution payment obligation on the defendant's ability to pay. *Id.*

Our first question was whether the district court had jurisdiction to revise the judgment since the defendant had already filed his notice of appeal. We recognized that ordinarily, filing a notice of appeal means the district court no longer has jurisdiction. *Id.* (citing *United States v. Brown*, 732 F.3d 781, 787 (7th Cir. 2013) and *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008)). But we recognized there are exceptions. *Id.* (collecting cases). We assessed whether another exception to the general rule existed in 18 U.S.C. § 3583(e)(2), which provides that district courts may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." *Id.* Consistent with the First Circuit's decision in *United States v. D'Amario*, 412 F.3d 253 (1st Cir. 2005), we held that Congress's use of "at any time" in 18 U.S.C. § 3583(e)(2) meant that the district court retained jurisdiction to modify

the defendant's conditions of supervised release even while his appeal was pending. *Ramer*, 787 F.3d at 838-39.

*Ramer* resolves the jurisdictional issue for us and means that the district court had jurisdiction to modify Taylor's conditions of probation. The statute at issue for Taylor, 18 U.S.C. § 3563(c), contains the exact same language allowing for modification "at any time" as does 18 U.S.C. § 3583(e)(2), the supervised release provision at issue in *Ramer*; the only difference is that one applies to conditions of probation and the other to conditions of supervised release. That difference is not material here, so the district court had jurisdiction to modify Taylor's conditions of probation as it did.

That is certainly not to say that the district court can make any change it wishes after a notice of appeal has been filed. *See, e.g., Brown*, 732 F.3d at 787 (district court lacked jurisdiction to recalculate guidelines range after notice of appeal filed); *McHugh*, 528 F.3d at 540 (district court lacked authority to make non-clerical change to sentence after notice of appeal filed); *see also In re Teknek, LLC*, 563 F.3d 639, 650 (7th Cir. 2009). *Griggs* remains the law, and we remind litigants to keep in mind Federal Rule of Criminal Procedure 37, which governs timely motions for relief that the district court lacks authority to grant because of a pending appeal (in the civil context, the rule is Federal Rule of Civil Procedure 62.1), as well as our Circuit Rule 57.[1] In light of our de-

---

[1]Circuit Rule 57 of the United States Court of Appeals for the Seventh Circuit provides:

> A party who during the pendency of an appeal has filed a motion under Fed. R. Civ. 60(a) or 60 (b), or any other rule that permits the modification of a final judgment, should request the district court to indicate whether it is

cision in *Ramer* that the district court had the authority to make the modification it did, no Circuit Rule 57 request was needed here.

## B. Challenges to Special Conditions of Probation

Satisfied that there is no jurisdictional impediment to proceeding, we turn to the three special conditions of probation that Taylor challenges. Special conditions of probation must be reasonably related to (1) the defendant's offense, history, and characteristics; (2) the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (3) the need for adequate deterrence; (4) the need to protect the public from further crimes of the defendant; and (5) the need to provide the defendant with treatment. 18 U.S.C. § 3563(b); *see United States v. Angle*, 598 F.3d 352, 360-61 (7th Cir. 2010) (supervised release). Moreover, a special condition must not cause a greater deprivation of liberty than is reasonably necessary to achieve the goals of deterrence, protection of the public, and rehabilitation. *United States v. Goodwin*, 717 F.3d 511, 522 (7th Cir. 2013). We review the district court's decision to impose a special condition for an abuse of discretion. *See United States v. Baker*, 755 F.3d 515, 523 (7th Cir. 2014).

### 1.  Viewing or Accessing Adult Pornography

The first special condition of probation that Taylor challenges bars him from viewing adult pornography and from

---

inclined to grant the motion. If the district court so indicates, this court will remand the case for the purpose of modifying the judgment. A party dissatisfied with the judgment as modified must file a fresh notice of appeal.

knowingly visiting any place where adult pornography is
sold or available for viewing. The condition reads:

> The defendant shall not knowingly view or listen to any
> form of pornography which contains adults engaging in
> sexual intercourse, oral sex, sex with objects or animals,
> acts of masturbation, or the lascivious exhibition of geni-
> talia. Additionally, the defendant shall not knowingly
> patronize or visit any such establishment or internet
> site/location where the above materials are sold, or
> available for viewing.

This condition is not limited to child pornography, which is
illegal to possess. Instead, it bars Taylor from accessing adult
pornography that is otherwise legal. *Cf. United States v. Cary*,
775 F.3d 919, 926 (7th Cir. 2015) (discussing condition im-
posed upon defendant, who failed to register as a sex of-
fender, from viewing "illegal pornography" and noting it
did not prohibit him from viewing legal adult pornography).

"Adult pornography, unlike child pornography, enjoys
First Amendment protection, and so we must be especially
cautious when considering a ban on possessing adult por-
nography." *United States v. Shannon*, 743 F.3d 496, 500 (7th
Cir. 2014). On several occasions, we have vacated conditions
banning a defendant from viewing sexually explicit materi-
als involving only adults because they were too vague or
overbroad. *See, e.g.*, *United States v. Adkins*, 743 F.3d 176 (7th
Cir. 2014); *Shannon*, 743 F.3d at 501; *United States v. Kappes*,
782 F.3d 828, 853-54 (7th Cir. 2015).

Taylor does not contend that the modified condition is
vague. Indeed, the district court had modified the condition
to alleviate vagueness concerns. As initially imposed, it had
read: "The defendant shall not view or listen to any form of
pornography, sexually stimulating material, or sexually ori-

ented material or patronize locations where such material is available." We also note here that while Taylor did not explicitly challenge that condition in his previous appeal, the government asserts to us that our review of Taylor's appeal of the current condition is for abuse of discretion. So even were there an argument that our standard of review should be different because Taylor did not explicitly appeal the previous condition, the government has not made any such argument. *Cf., e.g., United States v. Webster,* 775 F.3d 897, 902 (7th Cir. 2015) (finding government waived any objection that an objection should be considered waived by arguing that we should review for plain error).

Taylor maintains that the condition is overbroad. It is true that both Taylor's crime and adult pornography have to do with sexual activity. But there is no evidence that viewing or listening to adult pornography in any way led Taylor to commit the crime here, or has led him to commit any other crime, nor is there any evidence in the record that viewing or listening to adult pornography would make the repeat of Taylor's crime or similar crimes any more likely. The district court also did not find that there was any relationship between Taylor's viewing of adult pornography and the likelihood of recidivism. When the Third Circuit confronted a condition that banned adult pornography, and found that "nothing on this record suggests that sexually explicit material involving only adults contributed in any way to [the defendant's] offense, nor is there any reason to believe that viewing such material would cause [the defendant] to reoffend," that court vacated the condition. *United States v. Voelker*, 489 F.3d 139, 151 (3d Cir. 2007).

Here, the district court and government justify the ban on
the basis that Taylor created adult pornography by mastur-
bating in front of the web camera. In instituting the ban, the
court said, "Taylor created pornography by sending videos
of himself masturbating to a person he believed was a 13
year old girl, and requested that she engage in the same ac-
tivity." But the sexual images in this case, which were of Tay-
lor himself, were not facilitated by or motivated by his access
to adult pornography. And there is no suggestion that his
offense had anything to do with his viewing of adult por-
nography. Again, there is no finding or suggestion in the
record that Taylor would engage in similar conduct or
reoffend if he simply viewed legal adult pornography, which
is what the condition bars him from doing. *See Shannon*, 743
F.3d at 502 (vacating condition barring the viewing of adult
pornography in light of vagueness concerns and because the
"sentencing court did not point to anything in the record
suggesting that viewing sexually explicit material involving
only adults would cause Shannon to reoffend"); *United States
v Perazza-Mercado*, 553 F.3d 65, 78 (1st Cir. 2009) ("[T]he im-
position of the ban on the possession of adult pornography
as a condition of supervised release, without any explana-
tion and without any apparent basis in the record, consti-
tutes an error that is plain.").

We are not saying a court could never impose a special
condition prohibiting the possession of even legal adult por-
nography; there may be times when a sentencing court is
justified in imposing such a condition. *See Shannon*, 743 F.3d
at 502 (collecting cases). Here, however, the record does not
justify the ban. As a result, we find the district court abused
its discretion when it imposed the condition, and, like the

Third Circuit did with the special condition in *Voelker*, we vacate this special condition of Taylor's probation.

### 2. Inspection of Internet-Capable Devices

The next condition Taylor challenges concerns the probation office's ability to monitor his internet use. The condition provides:

> The defendant may not use the internet to access social chat-rooms in which users conduct conversations with other third-party chatroom users. This does not include informational chats used by websites to provide customer service or answers to frequently asked questions. Prior to accessing an internet capable device, the defendant shall provide notice to the probation department of the type and location of such device. To verify compliance with this condition, upon request, the defendant shall make available for inspection by the probation department, any such internet capable device.

Taylor proposed the first two sentences in his request for modification, so any challenge to that part of the special condition is waived. *See United States v. Mantas*, 274 F.3d 1127, 1130 (7th Cir. 2001). Taylor had also proposed that the condition state, "If the probation officer has reasonable suspicion to believe that the defendant has accessed a social chatroom, the probation officer may have access to the defendant's personal computer to verify compliance with this condition." The district court rejected this language, and Taylor renews on appeal his argument that a probation officer should only be allowed to access Taylor's personal computer upon reasonable suspicion that Taylor had violated a probation condition or committed a crime.

We disagree. While Taylor argues that there is no evidence that he has used a computer to access illegal material,

he used his computer to commit the offense in question. Specifically, while on his computer, he accessed an online chat room and then transferred obscene material to someone he thought was under the age of sixteen. As the district court stated, "Taylor's conviction stems entirely from his conduct on a computer."

The nature of Taylor's offense means that the district court did not abuse its discretion when it imposed a condition that allows the probation department to check Taylor's internet-capable devices even without reasonable suspicion. *See Kappes*, 782 F.3d at 863 (allowing court to impose condition allowing periodic, unannounced inspection of computer and internet-capable devices where defendant had thousands of images of child pornography on his computer). That Taylor's crime was solely the result of his activity on a computer makes his case materially different from our decision in *Goodwin*, 717 F.3d 511, to which he points. There we struck down an internet monitoring and computer search condition where there was no evidence that a computer had played any role in the defendant's convictions and no indication that he had used a computer to commit any crime. *Id.* at 523. The opposite is true here.

We have cautioned, however, against the imposition of overly broad search conditions as conditions of supervised release or probation. *See United States v. Farmer*, 755 F.3d 849 (7th Cir. 2014); *Goodwin*, 717 F.3d at 523. In *Farmer*, we recognized that 18 U.S.C. § 3583(d)(3) provides that a court may order as a condition for a person required to register under the Sex Offender Registration and Notification Act that the person submit his person, property, computer, and other items to search  by a probation officer "with reasonable sus-

picion concerning a violation of supervised or unlawful conduct by the person … ." Taylor's condition is even broader than that, as no reasonable suspicion is required. We reiterate the importance, when sentencing courts consider imposing a special condition like this one, that such "broad search and seizure authority" be "connected to [the defendant's] offense, history, and personal characteristics." *Goodwin*, 717 F.3d at 523. In light of the nature of Taylor's offense, we find the authority was sufficiently connected here, and we uphold this special condition.

### 3. Direct Contact with Minors

Taylor also challenges a third special condition, this one concerning contact with persons under the age of 18. It reads:

> The defendant shall have no knowing direct contact with a person under the age of 18, no indirect contact with a person under the age of 18 through another person or through a device (including a telephone, computer, radio, or other means) and the defendant must reasonably avoid and remove himself from situations in which he would have any other form of contact with a minor. The defendant shall not be in any area in which persons under the age of 18 are likely to congregate, such as school grounds, child care centers, sport centers for youth sports, or playgrounds.

We disagree with the suggestion that no ban is necessary because the conduct took place in 2006, and, according to Taylor, there is no evidence of any present risk to minors. The record reflects that in addition to the conduct for which he was convicted, Taylor contemplated meeting what he thought to be a thirteen-year-old girl in person. Fear of arrest, transportation logistics, and the uncertainty of whether

the girl would have sexual intercourse with him meant that Taylor did not set up a meeting in this case, but his statements in the internet chatroom suggest that he would have been open to meeting if transportation could be arranged. Some restriction on contact with minors while Taylor was on probation for this offense was justified.

That said, the special condition imposed here is quite broad and, indeed, broader upon modification than at its initial imposition. As initially imposed on August 15, 2012, the special condition of probation concerning contact with minors had included the sentence, "This provision does not encompass persons under the age of 18 with whom the defendant must deal in order to obtain ordinary and usual commercial services."[2] The modified condition at issue, however, does not.

As currently written, the special condition does not contain any exceptions to the bar on having any "knowing direct contact with a person under the age of 18." While the government suggests that the final sentence (the bar on being in areas where minors are likely to congregate) limits the first sentence, that is not how the plain language of the spe-

---

[2]The complete special condition as initially imposed read:

> The defendant shall not frequent places where children under the age of 18 congregate, nor associate or have verbal, written, telephonic, or electronic communication with any person under the age of 18, without the permission of the probation officer. This provision does not encompass persons under the age of 18 with whom the defendant must deal in order to obtain ordinary and usual commercial services.

cial condition reads. Rather, the first sentence, with its absolute bar on any knowing contact with minors, stands alone.

After the district court issued the modification order in this case, we expressed concerns about another similar broad no-contact-with-minors condition. We said in *United States v. Thompson*, 777 F.3d 368, 376 (7th Cir. 2015), that "'contact,' being undefined, could be understood to mean being served by a waitress, paying a cashier, sitting next to a girl (a stranger) at a baseball game, replying to a girl asking directions, or being shown a friend's baby girl—or his own baby, for that matter." Were he in any of these situations, Taylor would seem to be having the "knowing direct contact with a person under 18" that is barred by his conditions of probation. We later suggested that a condition that, unlike the absolute bar here, included exceptions for contact with non-related minors in the course of normal commercial business, in the presence of an adult approved by probation, and in other cases of unintentional or incidental contact, could be upheld. *Kappes*, 782 F.3d at 859-60.

As written, the condition is too broad and is an abuse of discretion. We are already remanding Taylor's case in light of another condition, and on remand the district court should reinstitute the normal commercial business exception, the removal of which appears to be an oversight. Other circuits have ruled that associational conditions of probation and supervised release do not apply to casual, chance, or inadvertent meetings. *See United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008); *United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001); *see also Arciniega v. Freeman*, 404 U.S. 4, 4 (1971) (per curiam). Depending on the circumstances, we might rule that way if Taylor was said to violate his probation for

doing one of the things we discussed in *Thompson*. It is also true, though, that "should [a defendant] deliberately seek out such contacts, they would cease to be 'casual' or 'unavoidable' and would fall within the condition's scope." *Loy*, 237 F.3d at 269. An explicit exception for instances of unintentional and incidental contact would make things clearer. *Cf. Kappes*, 782 F.3d at 859. On remand the district court can also bear in mind our discussion in *Kappes* concerning bans on non-incidental contact with minor males as well as females, where there was no evidence that either of the defendants was bisexual, which raised concerns as to whether they were overbroad. *Id.* at 859-60.

Taylor has not suggested to us or to the district court any specific family members or children of friends with whom he wishes to have contact. In light of the soon-coming end to Taylor's probation and the remand we are already ordering, if Taylor has specific minor family members with whom he seeks contact, he may ask the court to modify this condition, and the court can consider his request. *See Kappes*, 782 F.3d at 859 (stating that any violation of right to familial association is not yet ripe in light of twenty-year sentence and stating defendant could petition court for modification if he or family member had minor children); 18 U.S.C. § 3583(e)(2).

Finally, we note that Taylor did not raise in his opening brief a vagueness or other specific challenge to the condition's bar on being "in any area in which persons under the age of 18 are likely to congregate, such as school grounds, child care centers, sport centers for youth sports, or playgrounds." *Cf. MacMillen*, 544 F.3d at 76 (upholding similar special condition); *United States v. Webster*, 775 F.3d 897, 904

(7th Cir. 2015) (stating arguments not made in opening brief waived).

### III. CONCLUSION

Taylor's sentence is VACATED and his case is REMANDED for further proceedings consistent with this opinion.

EASTERBROOK, *Circuit Judge*, concurring. I join my colleagues' opinion but add a few words about jurisdiction.

The district court modified the terms of Taylor's probation while his direct appeal was pending in this court. Apart from any questions about jurisdiction, that was imprudent. Taylor was challenging both his conviction and his sentence, and one aspect of this court's decision concerned a term of probation. *United States v. Taylor*, 777 F.3d 434, 442–44 (7th Cir. 2015). Only one court at a time should address a subject; parallel litigation adds needless complications. Altering a judgment that is on appeal creates the prospect of wasting the district judge's time, the appellate judges' time, or both.

I agree with my colleagues that, under *United States v. Ramer*, 787 F.3d 837 (7th Cir. 2015), the district court had jurisdiction to proceed. *Ramer* holds that 18 U.S.C. §3583(e)(2), which states that a district court may modify a term of supervised release "at any time", implies that the district court may act while an appeal is pending, notwithstanding the norm that only one court at a time has jurisdiction. See, e.g., *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal"); *United States v. McHugh*, 528 F.3d 538 (7th Cir. 2008).

The statute governing probation, 18 U.S.C. §3563(c), says the same thing as §3583(e)(2), so *Ramer* logically covers probation as well as supervised release. But I do not find *Ramer* persuasive. It does not consider the possibility that "at any time" refers to how long after a judgment a court may act, rather than which court has authority to act.

Before the Sentencing Reform Act of 1984, district courts could modify sentences long after they had been imposed. See, e.g., *United States v. Addonizio*, 442 U.S. 178 (1979), discussing the old version of Fed. R. Crim. P. 35. Until Rule 35's adoption, "[t]he beginning of the service of the sentence in a criminal case end[ed] the power of the court even in the same term to change it." *United States v. Murray*, 275 U.S. 347, 358 (1928). The 1984 Act moves back toward a system of determinate sentencing, amending Rule 35 to allow a district court to modify a sentence only on remand from a court of appeals, or in response to a motion by the prosecutor based on assistance in other defendants' cases. Change also is possible under retroactive amendments to the Guidelines, and Rule 35 has been amended to allow correction of technical gaffes within 14 days of a sentence's imposition. The 1984 Act left in place, however, the two statutes I have mentioned, which treat probation and supervised release as special situations, because they entail ongoing monitoring that may last long after release from prison.

To say that the 14-day limit does not apply to probation and supervised release is not at all to say that a district court may act while the same judgment is being contested on appeal. Nothing in the text of §3563(c) or §3583(e)(2) speaks to jurisdiction, and the Supreme Court insists that jurisdictional rules be set out in jurisdictional terms. Rules about time for action do not affect jurisdiction. See *Eberhart v. United States*, 546 U.S. 12 (2005) (holding this about Fed. R. Crim. P. 33 in particular); see also, e.g., *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015); *Henderson v. Shinseki*, 562 U.S. 428 (2011); *Dolan v. United States*, 560 U.S. 605 (2010). (The rare exceptions to this norm rest on historical practice. See *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *Bowles v.*

*Russell*, 551 U.S. 205 (2007). A district court's authority to modify terms of release while an appeal is pending does not have the support of established practice.)

The panel in *Ramer* did not discuss the difference between timing rules and jurisdictional rules, and that omission is understandable. The parties had not discussed jurisdiction in their briefs; the panel did so on its own, without calling for submissions from the parties. The parties have not briefed jurisdiction in this appeal either. And *United States v. D'Amario*, 412 F.3d 253 (1st Cir. 2005), which *Ramer* followed, preceded *Eberhart* and other cases in the last decade that distinguish timing rules from jurisdictional rules. (*D'Amario* also did not cite pre-2005 decisions about this topic. The modern doctrine begins with *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).)

Nor did *Ramer* discuss the effect of its holding on other rules and statutes that allow a district court to modify a judgment. Take Fed. R. Civ. P. 60(b), some parts of which allow a judgment to be modified years after its entry. Or take Fed. R. Crim. P. 12(b)(2) and Fed. R. Civ. P. 12(h), both of which say that a district court may dismiss a case "at any time" after concluding that subject-matter jurisdiction is missing. The civil and criminal rules contain many more "any time" references. (The phrase "at any time" appears 14 times in the criminal rules and 19 times in the civil rules.)

I had supposed, until *Ramer*, that such rules do not affect the allocation of jurisdiction between trial and appellate courts. Indeed, one of the "at any time" references appears in Fed. R. Crim. P. 36, which we held in *McHugh* does not permit a district court to act while an appeal on the same subject is pending. *Ramer* upsets this understanding, though

perhaps accidentally. It does not discuss any of these rules and, though it cites *McHugh*, does not recognize that *McHugh* concerns an "at any time" clause. So although I am content to follow *Ramer* today, I do not view the issue as closed. We appear to have an intra-circuit conflict that needs a fresh look with the benefit of briefs.

HAMILTON, *Circuit Judge*, concurring in part and dissenting in part. I agree with my colleagues: (a) that the district court had jurisdiction to decide whether to modify Taylor's conditions of probation, at least under 18 U.S.C. § 3563(c) and *United States v. Ramer*, 787 F.3d 837 (7th Cir. 2015); (b) that the condition of probation for inspection of internet-capable devices is appropriate; and (c) that the condition on contact with minors needs correction. I respectfully dissent, however, from Part II-B-1 of the majority opinion vacating the condition restricting Taylor's access to otherwise legal adult pornography.

When first setting conditions of probation for an offender, a district court exercises its sentencing discretion. When the district court here first imposed conditions of probation on Taylor, he did not even bother to appeal them. See *United States v. Taylor*, 777 F.3d 434 (7th Cir. 2015) (dealing with other issues). Taylor later moved under § 3563(c) to modify several conditions. He did not show any change in circumstances, but he raised new legal arguments based on intervening decisions by our court, and in particular on the scope of the prohibition on access to adult pornography. The district judge took Taylor's arguments seriously and modified the conditions, including the adult pornography condition, in light of our intervening decisions.

Taylor argues now, and my colleagues agree, that the adult pornography prohibition must be removed entirely. As all acknowledge, our review of the district court's actions is only for abuse of discretion, e.g., *United States v. Serrapio*, 754 F.3d 1312, 1318 (11th Cir. 2014); *United States v. Wyss*, 744 F.3d 1214, 1218 n.2 (10th Cir. 2014), the same standard we apply more often to decisions on whether to modify condi-

tions of supervised release. E.g., *United States v. Neal*, 662 F.3d 936, 938 (7th Cir. 2011); *United States v. Evans*, 727 F.3d 730, 732 (7th Cir. 2013).

I see no abuse of discretion here. First, I am not persuaded that Taylor had a right to have the district court start over from scratch on whether the condition should be imposed at all. When it was imposed in 2012, there was no objection or appeal. While the district court had the power to revisit the question, I do not see a duty to do so, except to the extent the terms of the condition were sharpened to comply with our intervening case law.

As for whether the adult pornography condition should have been imposed in the first place, there is empirical evidence weighing both for and against imposing such a condition on an offender like Taylor. See *United States v. Siegel*, 753 F.3d 705, 709 (7th Cir. 2014). The district court recognized this uncertainty and discussed *Siegel*. In the end, the court decided to stick with its original, unappealed decision to impose the condition, but to tailor it more narrowly in light of our decision in *United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014).

Surely the district court's discretion is especially broad when addressing an offender's motion to remove entirely an existing condition of probation he had not previously challenged. Neither *Adkins* nor this offender's motion required the district judge to revisit on the offender's demand the question whether to impose any restriction at all on his access to adult pornography. I would affirm the decision to deny the removal of the modified condition as well within the court's discretion.