In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3878

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERTO SANDOVAL-VELAZCO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:10-cr-00333-2 — **James B. Zagel**, *Judge.*

ARGUED SEPTEMBER 23, 2013 — DECIDED DECEMBER 3, 2013

Before BAUER, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Roberto Sandoval-Velazco appeals
the district court's denial of a mitigating role reduction as well
as the district court's application of post-*Booker* sentencing.
Sandoval-Velazco argued at sentencing that his role as a
courier should entitle him to a minor role reduction. The
district court found that he had considerable contact with large

amounts of narcotics and denied the reduction. For the reasons set forth below, we affirm.

## I. BACKGROUND

As early as 2009, Sandoval-Velazco, together with co-defendants Antonio Mendoza and Manuel Chavez, coordinated the distribution of large quantities of cocaine, heroin, and marijuana for a Mexican drug-trafficking organization in Chicago. Sandoval-Velazco also assisted in the collection and transportation of United States currency, which comprised the proceeds from the sale of these narcotics. Sandoval-Velazco primarily acted as a courier. He received instructions on where to obtain and deliver the narcotics from higher-ranked members of the organization. Sandoval-Velazco's probation officer stated in the Presentence Investigation Report ("PSR") that he was personally responsible for more than 150 kilograms of cocaine and 8.5 kilograms of heroin.

On April 28, 2010, Sandoval-Velazco, along with five others, was charged with conspiracy to possess and distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 846. Sandoval-Velazco pled guilty to five counts in connection with the distribution of illicit drugs.[1]

---

[1] Sandoval-Velazco pled guilty to: (1) conspiring to possess five or more kilograms of cocaine with intent to distribute, 21 U.S.C. § 846; (2) possessing five or more kilograms of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1); (3) possessing five kilograms or more of cocaine and one or more kilograms of heroin with the intent to distribute, 21 U.S.C. § 841(a)(1); and two counts of (4) using a telephone in furtherance of a drug-trafficking crime, 21 U.S.C. §§ 843(b), 846.

According to the PSR, Sandoval-Velazco's base offense level was 38, as the amount of narcotics was equivalent to 46,400 kilograms of marijuana. He was granted a three-level reduction for acceptance of responsibility, which lowered his total offense level to 35. The probation officer determined that no mitigating role adjustment was applicable because he was fully active in the conspiracy. She found that Sandoval-Velazco completed all tasks that were asked of him, which included obtaining and distributing large quantities of cocaine and heroin.

Sandoval-Velazco filed an objection to the PSR, arguing that he should be entitled to a two or three-level reduction for having a minor role in the drug conspiracy. In support of his claim, Sandoval-Velazco maintained that he did not exercise a leadership role, that he was only following the orders of his superiors, that he did not use any special skills in carrying out those orders, and that he merely acted as a courier. He also argues that he was subordinate to his co-defendant Mendoza, who was the average member of the conspiracy and who, unlike Sandoval-Velazco, was permitted to negotiate and coordinate with cocaine suppliers at the direction of his superiors.

The government argued that Sandoval-Velazco was an average participant in the conspiracy, with a role similar to Mendoza, whose involvement began after Sandoval-Velazco's. Sandoval-Velazco was not a mere courier for a minor drug scheme; for more than a year and a half he transported both large quantities of narcotics and millions of dollars in drug proceeds.

The district court denied Sandoval-Velazco's request for a minor role reduction. In doing so, the district court found that the most significant factor when determining culpability for a drug conspiracy is an individual's relation to quantity. It found that Sandoval-Velazco had an "intimate and substantial" connection to considerable amounts of narcotics. The district court went on to explain that Sandoval-Velazco's transportation of these large quantities of drugs, despite the fact that he was only following orders, supported finding a high level of culpability.

The district court then addressed whether Sandoval-Velazco was entitled to a sentence below the range set forth by the guidelines. In holding that he was not, the court found that his status as a courier did not confer a lesser degree of culpability and sentenced him to 135 months' imprisonment, which was the lowest sentence in the range set forth in the guidelines.

## II. ANALYSIS

Sandoval-Velazco raises two issues on appeal. First, he contends that the district court erred in rejecting his claim for a minor role reduction by basing its decision solely on the quantity of drugs involved in the conspiracy. Second, Sandoval-Velazco alleges that the district court committed procedural error in failing to recognize its own authority to grant a below-guideline sentence.

*A. Minor Role Reduction*

We review a district court's interpretation and application of the federal sentencing guidelines to the facts *de novo*, *United States v. Abbas*, 560 F.3d 660, 662 (7th Cir. 2009), and the

decision to deny a minor role reduction for clear error. *United States v. Miller*, 405 F.3d 551, 557 (7th Cir. 2005). Clear error will only be found if we review the evidence and conclude "with a definite and firm conviction that a mistake has been committed." *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011). We will rarely reverse, as the sentencing court is in the best position to determine the role that a defendant had in the criminal activity. *Id.*

Sandoval-Velazco believes that the district court committed clear error in denying him a minor role reduction as he served only a menial role in the conspiracy. Sandoval-Velazco bears the burden of proving by a preponderance of the evidence that a minor role adjustment is justified in his case. *United States v. Panaigua-Verdugo*, 537 F.3d 722, 724 (7th Cir. 2008). To succeed, he must show that he was substantially less culpable than the average participant in the conspiracy. *United States v. Gonzalez*, 534 F.3d 613, 616 (7th Cir. 2008). The determination of whether an individual is entitled to a reduction is based on the totality of the circumstances of each particular case. U.S.S.G. § 3B1.2 cmt. n.3(C); *see United States v. Diaz-Rios*, 706 F.3d 795, 799 (7th Cir. 2013) (in determining whether to give a reduction, a district court is to look at the defendant's role in the conspiracy as a whole, "including the length of his involvement in it, his relationship with the other participants, his potential financial gain, and his knowledge of the conspiracy.").

Sandoval-Velazco argues that the district court erred in its minor role analysis by basing its decision solely on the quantity of drugs involved rather than the actual role Sandoval-Velazco exercised in the conspiracy as evaluated against his co-conspir-

ators. He fails to recognize that the court analyzed the quantity of drugs for which he was responsible not to establish guilt per se, but to establish what role Sandoval-Velazco played in the drug conspiracy as a whole. It found his "intimate and substantial" connection to large quantities of narcotics to be determinative of the relative magnitude of his role in general. *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007). And this was not the only factor utilized in the district court's analysis. The court also implicitly recognized Sandoval-Velazco's role as a subordinate and acknowledged that he took orders from individuals that were higher up in the conspiracy. The court noted: "Sale and distribution might be another factor of great significance, but quantity counts, which means that the person who transports a lot of drugs rates fairly high on the culpability level even if what they're doing they're doing at the command of others." The court recognized that while Sandoval-Velazco may have only been a courier taking direction from others, he still played an integral part in the conspiracy and did not deserve a minor role reduction. *See Panaigua-Verdugo*, 537 F.3d at 725 (couriers may play an important role in a drug distribution scheme and are not automatically entitled to a mitigating role reduction).

While it may have been more effective to have an explicit discussion regarding the average member of the conspiracy, we cannot hold that such wording is required at every sentencing hearing. Each case presents its own set of facts, which are to be examined by the sentencing judge under the totality of the circumstances. U.S.S.G. § 3B1.2 cmt. n.3(C) ("The determination whether to apply [a mitigating role reduction] is based on the totality of the circumstances and involves a

determination that is heavily dependent upon the facts of the particular case."). It is not necessary to describe the exact characteristics of the average member of the conspiracy if we can ascertain from the sentencing court's analysis that a comparison to other members of the conspiracy was at least implicitly made. *United States v. Saenz*, 509 Fed. App'x 543, 548 (7th Cir. 2013).

Both Mendoza and Sandoval-Velazco were accountable for the distribution of at least 150 kilograms of cocaine and at least ten kilograms of heroin. At sentencing, the district court heard arguments from both parties concerning the culpability of Mendoza and whether he played a greater role in the conspiracy than Sandoval-Velazco. Sandoval-Velazco argued that he was only a courier for Mendoza and lacked the decision-making authority that Mendoza exercised. He recognized that he was a member of the conspiracy for a longer period of time, but nonetheless claimed to have held an insignificant role throughout his involvement. The government argued that Sandoval-Velazco's role was similar to that of Mendoza—each was responsible for similar quantities of narcotics—and was a participant for a much longer period of time.

Consequently, the evidence before the district court at sentencing included the quantity of drugs, the length of time that Mendoza and Sandoval-Velazco were involved in the conspiracy, and whether or not Sandoval-Velazco was simply a courier. In weighing the evidence, the district court found the quantity of drugs handled by Sandoval-Velazco to be the conclusive factor in determining culpability. While the court cannot base its denial of a reduction solely on the quantity of drugs involved in a case, it can give effect to a defendant's role

in connection with those drugs. *Cf. Diaz-Rios*, 706 F.3d at 799 ("Naturally, the court was entitled to take into account the substantial drug quantity involved here, but it is unclear what effect the court gave the government's insistence that notwithstanding the substantial amount of cocaine entrusted to Diaz-Rios, his role in the offense was nonetheless minor."). The court found that Sandoval-Velazco had an "intimate and substantial" relationship with large quantities of drugs for more than a year, despite doing so at the behest of his superiors. In other words, the court implicitly found that Sandoval-Velazco was no simple courier or chauffeur, and was therefore not substantially less culpable than the average member of the conspiracy. Sandoval-Velazco played an integral part in the drug conspiracy and was not deserving of a minor role reduction.

*B. District Court's Sentencing Authority*

Sandoval-Velazco also alleges that the district court erred in failing to recognize the authority to impose a below-guidelines sentence. Whether a district court followed proper sentencing procedures, including whether it exercised proper discretion in considering the guidelines, is a legal question reviewed *de novo*. *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010). When a district court does not consider an argument because it is unaware of its authority to do so, a remand is warranted. *United States v. Taylor*, 520 F.3d 746, 748 (7th Cir. 2008).

The government argued that a sentence within the guidelines adequately reflected the nature, duration, and extent of Sandoval-Velazco's criminal activity. Sandoval-Velazco countered by indicating that he would be deported following

his sentence, which constituted additional punishment given the fact that he would be leaving behind a fiancee and child. He also indicated that he had no prior arrests or criminal record and again emphasized that he was merely a courier in the conspiracy.

The district court found that being a courier was not an automatic entitlement to a below-guidelines sentence: "I recognize also that while the law does not recognize this, there are many people who believe that if you just carry this stuff from one place to another it's not the same thing as being a drug dealer." The court further stated that "the truth of the matter is, Congress could have declared that to be the case, they just didn't." The court then addressed Sandoval-Velazco's role in the offense, explaining that while he was not being given an aggravating role enhancement, he was nonetheless responsible for repeatedly transporting large amounts of narcotics over an extended period of time.

Sandoval-Velazco claims that the district court committed procedural error in failing to recognize its own authority to implement a below-guidelines sentence. He derives this notion from the district court's statement regarding the lack of Congressional action for sentencing couriers at a lower level than other members of a drug-trafficking conspiracy. Sandoval-Velazco alleges that the district court appeared to be sympathetic to his arguments at sentencing, but absent some mandate by Congress the district judge believed that he could not consider them.

Certainly, a district court is within its authority to impose a sentence outside of that recommended by the guidelines.

*United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) ("[A] judge who understands what the Commission recommends, and takes account of the multiple criteria in § 3553(a), may disagree with the Commission's recommendation categorically, as well as in a particular case."). Here, there is nothing to suggest that the district court was unaware of its authority to sentence Sandoval-Velazco below the minimum sentence recommended by the guidelines. The district court's statement on Congressional policy simply demonstrates that it considered Congress' judgment in treating narcotics couriers similarly to narcotics distributors—had Congress meant for couriers to be sentenced less severely as a matter of course, it would have said as much. Moreover, the district court's statement that it was "going to give him a guideline sentence" signifies that it fully understood that it was within its rights to do otherwise. Thus, we find no error in the district court's sentencing of Sandoval-Velazco.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of a mitigating role reduction and its application of the sentencing guidelines.