In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 14-3799 & 15-3193

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CAREY RAY,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:12-CR-171 — **James T. Moody**, *Judge.*

_____

ARGUED MARCH 29, 2016 — DECIDED JULY 27, 2016

_____

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* When he was 29, Carey Ray started to chat over the Internet with a 14-year-old girl, called "Alexia" to protect her identity. At their first in-person meeting Ray plied Alexia with marijuana and cognac. At their second he took her to a motel (crossing from Indiana into Illinois), where marijuana and alcohol were followed by sexual intercourse. The jury in this criminal prosecution was

entitled to find that Ray knew Alexia to be 14 (so that she *could not* legally consent to sex) and that Ray used drugs and force to overcome her resistance (so that she *did not* consent). Ray has been convicted of violating 18 U.S.C. §2423(a) (knowingly transporting a minor across state lines to engage in criminal sexual activity) and sentenced to 320 months in prison plus 15 years of supervised release.

Ray contends that the evidence is insufficient to show that, when he crossed the state border, he intended to have sex with Alexia. Yet he had raised the possibility with Alexia, and practically the first thing he did on arriving in Illinois was rent a motel room (booked for a four-hour stay). After Alexia became woozy from the marijuana and cognac, Ray forced himself on her. When she said that she was not ready, he replied: "I paid for this room. I'm gonna get what I want." The jury was entitled to infer that Ray knew when he drove into Illinois what he wanted and planned to do.

Section 2423(a) creates a piggyback offense: The prosecution must show that the sexual activity after crossing the state line violated some other statute. The indictment charged Ray with aggravated criminal sexual abuse, in violation of 720 ILCS 5/11-1.60, in two ways: first, that Ray used force or the threat of force to commit an "act of sexual conduct" with someone under the age of 17 (§5/11-1.60(c)(1)); second, that Ray committed an "act of sexual penetration or sexual conduct" with someone under the age of 17, while at least 5 years older than the victim (§5/11-1.60(d)). The evidence permitted a reasonable jury to find that Ray violated the Illinois statute in both of these ways. But he maintains that the instructions were defective.

The judge told the jury that, to convict Ray of violating the federal statute, it had to find that he also violated the Illinois statute. The instruction listed each element of each of the two subsections of the Illinois statute on which the prosecution relied. For example, the instruction told the jury that to find a violation of §5/11-1.60(d) it had to find that Ray (1) committed an act of sexual conduct; (2) with a person who was at least 13 but under 17 at the time; (3) while being at least 5 years older than the other person. Ray asked the judge to add a fourth element: that he lacked a reasonable belief that Alexia was 17 or older. The district court declined to add this to the list of elements but did tell the jury that Ray's reasonable belief that Alexia was 17 or older was a defense. The instruction added that the prosecution had to negate that defense beyond a reasonable doubt.

With respect to the offense under §5/11-1.60(c)(1), Ray wanted the judge to tell the jury that, even if he used force (or threats of force), the prosecution still had to prove that Alexia did not consent. Once again the district judge gave an instruction calling this matter a defense rather than an element, but providing that to find a violation of state law the prosecution had to negate the defense of consent by proof beyond a reasonable doubt.

According to Ray, by calling these subjects defenses the instructions relieved the prosecution of its burden of persuasion. That's not so, because the instructions expressly provided that the prosecutor bore the burden on the defenses. State law calls consent, and a reasonable belief that the other person was at least 17, defenses rather than elements. 720 ILCS 5/11-1.70. This statute does not say which side has the burden of persuasion; the district judge adopted the position

most favorable to Ray by assigning the burden to the prosecutor. That Illinois pattern jury instructions treat these defenses, once raised, as if they were elements, does not compel a federal court to follow suit. Federal practice prevails in federal court, even when state law provides the substance. This circuit's pattern criminal jury instructions likewise are not mandatory. A judge can draft instructions in multiple ways, as long as they frame the essential questions in language that jurors are likely to grasp.

Assigning the burden of a defense to the prosecution may confuse lay jurors, but almost any legal language has that potential. Ray says that his jury *was* confused, to his detriment, about these defenses, but the two notes from the jury show a different kind of confusion. The jury's first question asked: "Does No. 18 define No. 17 Question 3? Or is this a separate or additional charge?" The second read: "No 18 Can we find defendant guilty or not guilty of Section (d), (c)(1), or both? Because indictment doesn't separate them." Instruction 17 told the jury the elements of §2423(a) and Instruction 18 the elements of the Illinois statute. It is evident from these notes that the jury did not initially grasp that Ray was charged with only one crime (a violation of federal law), but that to prove the violation of federal law the prosecution had to show that Ray violated a state law after entering Illinois. That kind of confusion may be inherent in piggyback statutes and has nothing to do with the separation of the state statute into elements (Instruction 18) and defenses (Instruction 20, which the jury did not ask about). Ray does not complain about the answers the judge gave to the jury's questions, so we must assume that the verdict was reached with the necessary understanding.

We turn to sentencing. The presentence report (seconded by the judge) started with U.S.S.G. §2G1.3, which applies to convictions under §2423. Guideline 2G1.3 has a cross-reference: "If the offense involved conduct described in 18 U.S.C. §2241 or §2242, apply §2A3.1". The presentence report concluded that Ray had used force, bringing his conduct within the scope of 18 U.S.C. §2241(a)(1), which forbids using force to accomplish a sexual act. Guideline 2A3.1 has a higher base offense level (30, compared to 28 under §2G1.3), plus offense characteristics that add more levels than the characteristics under §2G1.3. Ray insists that he did not use force, but Alexia testified that Ray pushed her, climbed on top of her, and penetrated her even though she was trying to resist. A medical exam found scratches on her body consistent with the use of force. This supports the use of the cross-reference.

Ray calls the use of one force-specific offense characteristic in §2A3.1 "double counting" because the §2241(a) offense itself entails force. But we held in *United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012), that the Guidelines permit a single fact to count under more than one Guideline or offense characteristic. There is no general rule against "double counting"; there is only a need for the judge to count as the Guidelines themselves count. Ray relies on a number of cases in this circuit that precede *Vizcarra*, which was circulated to the full court under Circuit Rule 40(e), see 668 F.3d at 519, because it was cleaning up inconsistency in circuit law. Precedents inconsistent with the outcome of a Rule 40(e) decision have no continuing force. There is no problem under *Vizcarra* and the language of §2A3.1.

When pronouncing sentence, the district judge did not say anything in particular about three of Ray's arguments for a lower sentence: that this was his first offense, that he had an extensive work history, and that he is a devoted father. Ray calls this silence an error. But the first of his points is built into the Guidelines (he had a criminal history level of I) and did not require further comment, and the other two are the sort of stock arguments that may be passed in silence. See, e.g., *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1047–48 (7th Cir. 2013). We held in *United States v. Young*, 590 F.3d 467, 474 (7th Cir. 2009), that being a devoted parent does not require specific discussion in sentencing. See also *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008). We treated work history the same way in *United States v. Chapman*, 694 F.3d 908, 916 (7th Cir. 2012); *United States v. Russell*, 662 F.3d 831, 854 (7th Cir. 2011); and *United States v. Allday*, 542 F.3d 571, 572–73 (7th Cir. 2008).

This brings us to the appeal's most difficult subject: the district court's handling of the conditions of supervised release. The district court pronounced Ray's sentence in December 2014. Decisions in this circuit since then have announced both procedural and substantive requirements for permissible conditions of supervised release. See, e.g., *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015); *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015). Ray's brief in his initial appeal, No. 14-3799, contends that some of these conditions are inconsistent with the circuit's more recent precedent.

Conceding that nine of the conditions were indeed either unwarranted or poorly worded, the United States asked the district court to fix the problem while Ray's appeal was pending. Circuit Rule 57 affords one way by which this

might occur. It provides that if the district court is inclined to modify a judgment during an appeal's pendency, it may request this court's permission to do so. This court then can decide whether it is appropriate to remand to the district court immediately or to resolve the appeal and then let the district judge clean up any remaining problems.

The United States did not ask the district judge to use Circuit Rule 57. Instead the prosecutor asked the judge to proceed as if no appeal were pending and to modify the conditions of supervised release under 28 U.S.C. §3583(e)(2), which says that conditions may be modified at "any time". The judge then summarily changed the language of nine conditions. Ray had asked the judge to wait for the appeal to be resolved, but he decided to act immediately—without this court's consent under Circuit Rule 57, without holding a new sentencing proceeding under Fed. R. Crim. P. 32, and without receiving full briefs and argument from Ray's lawyers. Ray then filed a new appeal, docketed as No. 15-3193, contending that the district court lacked jurisdiction to alter the judgment while it was under review by this court, and that four of the conditions, even after revision, remain out of compliance with *Thompson* and its successors.

The district court concluded that it was entitled to disregard Circuit Rule 57 and the pending appeal in light of *United States v. Ramer*, 787 F.3d 837 (7th Cir. 2015), and *United States v. Taylor*, 796 F.3d 788 (7th Cir. 2015). *Ramer* concludes that the "at any time" language in §3583(e)(2) supersedes the normal rule that only one court at a time has jurisdiction. *Taylor* reached the same conclusion about conditions of probation. Observing that *Ramer* was decided without jurisdictional briefs from the parties, and that jurisdiction was not

contested in *Taylor*, Ray has asked us to revisit the subject and to overrule both *Ramer* and *Taylor*.

Ray relies on the considerations presented by a separate opinion in *Taylor*. Rather than paraphrase, we quote:

> *Ramer* holds that 18 U.S.C. §3583(e)(2), which states that a district court may modify a term of supervised release "at any time", implies that the district court may act while an appeal is pending, notwithstanding the norm that only one court at a time has jurisdiction. See, e.g., *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal"); *United States v. McHugh*, 528 F.3d 538 (7th Cir. 2008).

> The statute governing probation, 18 U.S.C. §3563(c), says the same thing as §3583(e)(2), so *Ramer* logically covers probation as well as supervised release. But I do not find *Ramer* persuasive. It does not consider the possibility that "at any time" refers to how long after a judgment a court may act, rather than which court has authority to act.

> Before the Sentencing Reform Act of 1984, district courts could modify sentences long after they had been imposed. See, e.g., *United States v. Addonizio*, 442 U.S. 178 (1979), discussing the old version of Fed. R. Crim. P. 35. Until Rule 35's adoption, "[t]he beginning of the service of the sentence in a criminal case end[ed] the power of the court even in the same term to change it." *United States v. Murray*, 275 U.S. 347, 358 (1928). The 1984 Act moves back toward a system of determinate sentencing, amending Rule 35 to allow a district court to modify a sentence only on remand from a court of appeals, or in response to a motion by the prosecutor based on assistance in other defendants' cases. Change also is possible under retroactive amendments to the Guidelines, and Rule 35 has been amended to allow correction of technical gaffes within 14 days of a sentence's imposition. The 1984 Act left in place, however, the two statutes I have mentioned, which treat probation and supervised release as special situations, because they entail ongoing monitoring that may last long after release from prison.

To say that the 14-day limit does not apply to probation and supervised release is not at all to say that a district court may act while the same judgment is being contested on appeal. Nothing in the text of §3563(c) or §3583(e)(2) speaks to jurisdiction, and the Supreme Court insists that jurisdictional rules be set out in jurisdictional terms. Rules about time for action do not affect jurisdiction. See *Eberhart v. United States*, 546 U.S. 12 (2005) (holding this about Fed. R. Crim. P. 33 in particular); see also, e.g., *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015); *Henderson v. Shinseki*, 562 U.S. 428 (2011); *Dolan v. United States*, 560 U.S. 605 (2010). (The rare exceptions to this norm rest on historical practice. See *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008); *Bowles v. Russell*, 551 U.S. 205 (2007). A district court's authority to modify terms of release while an appeal is pending does not have the support of established practice.)

The panel in *Ramer* did not discuss the difference between timing rules and jurisdictional rules, and that omission is understandable. The parties had not discussed jurisdiction in their briefs; the panel did so on its own, without calling for submissions from the parties. The parties have not briefed jurisdiction in this appeal either. And *United States v. D'Amario*, 412 F.3d 253 (1st Cir. 2005), which *Ramer* followed, preceded *Eberhart* and other cases in the last decade that distinguish timing rules from jurisdictional rules. (*D'Amario* also did not cite pre-2005 decisions about this topic. The modern doctrine begins with *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).)

Nor did *Ramer* discuss the effect of its holding on other rules and statutes that allow a district court to modify a judgment. Take Fed. R. Civ. P. 60(b), some parts of which allow a judgment to be modified years after its entry. Or take Fed. R. Crim. P. 12(b)(2) and Fed. R. Civ. P. 12(h), both of which say that a district court may dismiss a case "at any time" after concluding that subject-matter jurisdiction is missing. The civil and criminal rules contain many more "any time" references. (The phrase "at any time" appears 14 times in the criminal rules and 19 times in the civil rules.)

> I had supposed, until *Ramer*, that such rules do not affect the allocation of jurisdiction between trial and appellate courts. Indeed, one of the "at any time" references appears in Fed. R. Crim. P. 36, which we held in *McHugh* does not permit a district court to act while an appeal on the same subject is pending. *Ramer* upsets this understanding, though perhaps accidentally. It does not discuss any of these rules and, though it cites *McHugh*, does not recognize that *McHugh* concerns an "at any time" clause. So although I am content to follow *Ramer* today, I do not view the issue as closed. We appear to have an intra-circuit conflict that needs a fresh look with the benefit of briefs.

796 F.3d at 797–98 (concurring opinion). Ray has asked us to take the "fresh look with the benefit of briefs" for which the concurring opinion called.

Ray wants us not only to overrule recent precedents but also to create a conflict among the circuits. (As far as we can see, no circuit other than the First and the Seventh has addressed the issue.) We are reluctant to do either, if an alternative is available. And we think that one is available. We hold today that, whether or not it possesses jurisdiction to revise the conditions of supervised release while an appeal is pending, a district court should not exercise that jurisdiction without receiving permission under Circuit Rule 57—and it should not seek that permission in the absence of strong reasons that are lacking in Ray's case.

One important reason is that *Thompson* and its successors call for full resentencing when the district court imposes unjustified or vague conditions of supervised release. *Thompson* recognized that there may be a relation between the conditions of supervised release, or among the conditions themselves, that is best assessed by reconsidering the sentence as a package. A change in one condition may call for another to be strengthened—or abandoned. And changes that may

make supervised release less (or more) effective as a punishment or deterrent could call for a term of imprisonment that is longer (or shorter).

But if a district judge modifies a handful of contested conditions while the sentence is on appeal, it is not possible either to adjust the relation among conditions or to change the balance between time in prison and time subject to supervision. A proceeding such as the one conducted in this case defeats the remedy devised by *Thompson* and its successors. If conditions of supervised release are modified under §3583(e)(2) while the defendant is *on* release, the judge need not reconsider the time in prison. But a change made at the very beginning of imprisonment may make the process of full resentencing important.

Sometimes it is sensible to fix problems in the supervised-release portion of the sentence and let the rest stand. See, e.g., *United States v. Sainz*, No. 13-3585 (7th Cir. June 27, 2016); *United States v. Bickart*, No. 15-2890 (7th Cir. June 17, 2016); *United States v. Guidry*, 817 F.3d 997 (7th Cir. 2016); *United States v. Purham*, 795 F.3d 761 (7th Cir. 2015). Whether to proceed that way is a decision committed to this court, applying the principles developed in our precedents. That role should not be bypassed by a district judge's unilateral decision. Circuit Rule 57 makes sure that the right body makes the decision.

A second reason is closely related to the first: When a full resentencing is appropriate, the district court must comply with Fed. R. Crim. P. 32. That means bringing the defendant into court, considering briefs and evidence that the parties elect to present, and allowing the defendant an opportunity to address the judge personally to request a particular sen-

tence (or just to request lenience). Our recent cases encourage the district court to circulate proposed conditions to the parties before the hearing, so that they can choose which to accept and which to contest, and formulate arguments against those that are contested. See, e.g., *United States v. Speed*, 811 F.3d 854, 859 (7th Cir. 2016); *Kappes*, 782 F.3d at 842–44. The district court did not afford Ray a Rule 32 hearing, however, or permit him a full opportunity to challenge the prosecutor's proposed revisions of the nine conditions.

A defendant who asks the judge to change one or a few conditions under §3583(e)(2) is entitled to waive his rights under Rule 32, and a given request might be understood to signify a desire to bypass a full hearing without the necessity of a formal waiver. But when the prosecutor is the one who proposes a change, no waiver by the defense can be implied. Ray protested the procedure and did not relinquish his rights under Rule 32.

Our third and final reason for insisting on the use of Circuit Rule 57 is that a change by the district court can needlessly prolong and complicate the appeal. Before the district court modified the conditions of Ray's supervised release, he had filed his principal appellate brief. The change in the sentence led to a substantial delay in appellate review as Ray took a new appeal and filed another opening brief. Duplication of briefs may waste the time of lawyers. More seriously, for defendants who have a good challenge to a conviction, delay in appellate review means unjustified time in prison.

Instead of taking steps that delay appellate review, and perhaps prolong the imprisonment of someone who should be released quickly, a district court should wait for our decision of the appeal. Full reversal is one possible outcome.

Then there would be no need for supervised release, and any dispute about the conditions of release would become moot. Reversal of some but not all counts is another possible outcome. Then the whole sentencing package, including the duration and conditions of supervised release, would need to be reviewed, and changes the district court made in the interim would be so much wasted motion. Still another possibility is affirmance across the board—that is, we might reject not only challenges to the conviction but also contentions that the conditions of supervised release are improper. That disposition would obviate a need for changes in the conditions.

Waiting for the outcome of the appeal before taking up a request under §3583(e)(2) usually is much the best course. It isn't as if there were a need for a speedy rewrite. Ray will spend more than 20 years in prison before his supervised release begins. Only when the term of imprisonment is short, and supervised release might commence before the appeal ends, would it be prudent to modify the conditions while the appeal is pending. And when the district judge believes that this is so, the procedure laid out by Circuit Rule 57 would allow this court to decide whether an expedited decision of the appeal could be a better solution.

Because this opinion adopts a rule of practice for the circuit, it was circulated before release to all active judges. See Circuit Rule 40(e). None favored a hearing en banc.

Our conclusion that adherence to Circuit Rule 57 makes it unnecessary to decide whether *Ramer* and *Taylor* are correct about jurisdiction does not transgress the holding of *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–102 (1998), that federal courts cannot decide issues under the

doctrine of "hypothetical jurisdiction." That doctrine posited that it did not matter whether the court had subject-matter jurisdiction, as long as the plaintiff lost on the merits, so that the court could just assume the existence of jurisdiction. *Steel Co.* observes that jurisdiction means the authority to decide, and a decision in favor of defendant is as much in need of jurisdiction as a decision in favor of plaintiff. Circuit Rule 57, by contrast, calls for *no* decision in the district court while the appeal is pending (unless this court remands), and no decision is as consistent with no jurisdiction as it is with jurisdiction.

In the years following *Steel Co.*, the Justices have held that there is no priority among the many reasons for *not* deciding a case. So, for example, a court may dismiss a suit for lack of personal jurisdiction without deciding whether it has subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999). It may dismiss on the ground of forum non conveniens without deciding whether it has subject-matter jurisdiction. *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007). The Court stated in *Ruhrgas* that a judge has leeway to "choose among threshold grounds for denying audience to a case on the merits". 526 U.S. at 585. And this implies that a district court may wait for the outcome of the appeal (or for action under Circuit Rule 57) whether or not it has subject-matter jurisdiction; all the delay does is postpone resolution of the request until a more appropriate time.

In this case the district court jumped the gun and modified nine conditions while Ray's original appeal was pending. The appropriate remedy is the same as in *Thompson*: a remand for full resentencing. The district court should circu-

late the text of all proposed conditions to the parties before the resentencing and allow each side an opportunity to make whatever objections and arguments the litigant deems appropriate. See *United States v. Bloch*, No. 15-1648 (7th Cir. June 17, 2016), slip op. 14–15. When resolving the parties' contentions, the district judge will be able to consider the effect of appellate decisions that postdate the modification in September 2015.

Ray's conviction is affirmed, but the sentence is vacated and the case is remanded for resentencing.