**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 15, 2016
Decided February 28, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 16-1407

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States |
| *Plaintiff-Appellee,* | District Court for the Northern District |
| | of Illinois, Eastern Division. |
| *v.* | |
| | No. 14 CR 00591-1 |
| VENANCIO COVARRUBIAS, | |
| *Defendant-Appellant.* | Edmond E. Chang, |
| | *Judge.* |

**O R D E R**

Venancio Covarrubias pleaded guilty to conspiracy to possess and distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and was sentenced within the calculated guidelines range to 135 months' imprisonment. On appeal Covarrubias raises a single claim: that the district court committed clear error in denying him a minor-role reduction under U.S.S.G. § 3B1.2. We affirm his sentence.

During a 2013 wiretap, the DEA learned that Covarrubias was receiving cocaine shipped to him in Elgin, Illinois, from "Tadeo Produce," a fictitious Mexican company. The agents also learned that Covarrubias was laundering drug proceeds. Agents

arrested Covarrubias in October 2014, a month after authorities in Laredo, Texas, had seized 159 kilograms of cocaine found in a semi-trailer filled with "Tadeo Produce" tomatoes destined for Covarrubias's warehouse in Elgin. After his arrest, Covarrubias told the agents that a friend in Mexico had arranged a July 2013 meeting with "Victor," the purported manager of Mexico-based Tadeo Produce. Covarrubias agreed to receive shipments of tomatoes, and Victor instructed him to create a fictitious company—Covarrubias Distributions, Inc.—and rent a warehouse to facilitate deliveries and store tomatoes. Victor accompanied Covarrubias to inspect and rent an Elgin warehouse, where Victor also introduced Covarrubias to "Manuel," who would supervise the shipments.

That same month, Covarrubias confessed to the agents, he received two truckloads of tomatoes. Victor was part of the Sinaloa Cartel, however, and the third shipment, in August 2013, included 60 kilograms of cocaine. Covarrubias knew that the shipment contained cocaine, but he continued working for Victor and Manuel. All together he received 7 shipments of 60 kilograms each, but only the first of those shipments was acknowledged in the plea agreement as relevant conduct.

In addition, Covarrubias served as a point of contact for the delivery drivers, and he also helped launder drug money for the next two months. He picked up narcotics proceeds from persons throughout the Chicago area, deposited the cash into bank accounts he controlled, and wired money to Tadeo Produce in Mexico. Covarrubias kept approximately $1,000 per pickup as compensation. In total, he handled more than $200,000 and wired no less than $115,321 to Tadeo Produce before he was caught.

After pleading guilty, Covarrubias asserted that he was entitled to a reduction in offense level as a minor participant, *see* U.S.S.G. § 3B1.2. Although acknowledging that his role was necessary to the organization, Covarrubias insisted he was just a "tiny cog in a very big wheel." In the defendant's view, the downward adjustment was warranted to reflect that he received only a "pittance" compared to others, and that his involvement was short in duration and directed by superiors. Covarrubias said he was "basically accepting responsibility for group conduct" since he did not personally handle the large amounts of cocaine.

The district court rejected Covarrubias's argument. The court reasoned that the cocaine supplier's greater culpability did not automatically make § 3B1.2 applicable because "that is the case in every drug case." The court concluded that Covarrubias played a "crucial role," and that "so many facts" pointed "toward the rejection of the

minor participant." The court rejected the view that Covarrubias was "some sort of mere unloader" and recognized instead that he "created this fake business" and "was the front man." And although Covarrubias claimed not to know about the cocaine trafficking until the third shipment, he then "knew that this was a cocaine trafficking operation" and "he certainly let it continue." The court further noted that Covarrubias "opened up a bank account to help launder the money and help conceal the drug nature," and "on top of that he picked up drug money" and "wired it to Mexico." For all these reasons, the district court concluded that Covarrubias fell "well short of establishing" that he was a minor participant.

On appeal Covarrubias questions adequacy of the district court's evaluation of his culpability relative to other participants and also contends that the court failed to appreciate that he didn't know about or have direct involvement with the cocaine seized in Laredo. Covarrubias has the heavy burden of showing that the district court clearly erred in denying him a minor-participant reduction. *United States v. Orlando*, 819 F.3d 1016, 1024 (7th Cir. 2016); *United States v. Sandoval-Velazco*, 736 F.3d 1104, 1107 (7th Cir. 2013). A minor-role reduction is reserved for those who are "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. This court "will rarely reverse, because the sentencing court is in the best position to evaluate the defendant's role in the criminal activity." *United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011); *see also United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004).

As to the other participants, it may be "more effective to have an explicit discussion regarding the average member of the conspiracy," but sentencing courts are not required to do so as long as we "can ascertain from the sentencing court's analysis that a comparison to other members of the conspiracy was at least implicitly made." *Sandoval-Velazco*, 736 F.3d at 1108. Before us, Covarrubias seeks to bolster his argument with a laundry list of additional facts that were not argued in the district court. He asserts, for example, that "he neither arranged nor coordinated any of the shipments" because that was Victor's role, that there is no evidence that he "spoke to the driver responsible for the 159-kilogram shipment," and that his presence at the warehouse wasn't even necessary since Manuel had a building key and a remote for the garage door. Covarrubias also asserts that he "needed Manuel's help to secure a lease for the warehouse" and to open the business bank accounts. But "where each person was an 'essential component' in the conspiracy, the fact that other members of the conspiracy were more involved does not entitle a defendant to a reduction in the offense level." *McKee*, 389 F.3d at 700 (quoting *United States v. Castillo*, 148 F.3d 770, 776 (7th Cir. 1998)).

And this court has upheld findings that even couriers, like the truck drivers in this case, were not minor participants even though they delivered drugs only once or twice, in part because couriers are important to a distribution scheme. *See United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959–960 (7th Cir. 2004); *see also Sandoval-Velazco*, 736 F.3d at 1109 (7th Cir. 2013) (affirming denial of minor-role reduction to courier finding that his status as courier did not confer less culpability); *United States v. Panaigua-Verdugo*, 537 F.3d 722, 725 (7th Cir. 2008) (concluding that courier had acted as "essential component" in conspiracy by delivering drugs in four of seven drug transactions).

Here, the district court considered the totality of the circumstances and found that, although Covarrubias's superiors were more culpable, he still played a "crucial role." The district court pointed out the "many facts" supporting the denial: Covarrubias was not merely an unloader but rather the front man for a fictitious business created by him, he knew beginning with the third shipment that cocaine was being trafficked yet let the operation continue, he played a crucial role in the business by continuing to accept payments, and he laundered money to "conceal the drug nature" as "an additional step" that "would disqualify him from an argument that he was substantially less culpable than others in the offense."

As for the amount of cocaine, Covarrubias essentially argues that, although the 159 kilograms seized in Texas was correctly included in the drug quantity, the district court should have cut him a break and excluded it in deciding whether he should receive a reduction as a minor participant. Covarrubias says that the entire 219 kilograms attributed to him is not based on "actual criminal conduct," which, in his view, is the correct inquiry under § 3B1.2 cmt. n.3(B). First, this is an incorrect statement about the sentencing guidelines. The introduction to Chapter 3, Part B, explicitly states that the "determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct)" and "not solely on the basis of elements and acts cited in the count of conviction." *See United States v. Hill*, 563 F.3d 572, 578 (7th Cir. 2009) (explaining that extended sequence of events surrounding offense of conviction provides context that cannot be disregarded in determining eligibility for role reduction); *see also United States v. Ramsey*, 237 F.3d 853, 861 (7th Cir. 2001) (explaining that introductory comment to Chapter 3, Part B, is clear that all relevant conduct is considered). Second, in the plea agreement Covarrubias took responsibility for the first 60-kilogram shipment plus the 159 kilograms in the truck (for a total of 219 kilograms). He cannot distance himself from a substantial part of that amount simply because the truck was intercepted in Laredo before it reached his warehouse in Elgin. Anyway,

Covarrubias's contention about the cocaine in the truck is particularly frivolous, since, as the district court found, the true amount of cocaine includes the other six deliveries.

AFFIRMED.