**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 5, 2018
Decided August 20, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-3638

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, <br><br> *v*. <br><br> MANISH B. PATEL, <br> *Defendant-Appellant*. | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 17-CR-94-1-JPS <br><br> J.P. Stadtmueller, <br> *Judge*. |

**O R D E R**

Manish Patel thought that he had found a way to have large amounts of money fall into his lap: through a scheme in which callers pretending to be government officials tricked victims into transferring funds to fictitious entities across the United States. Equipped with fake identification cards, Patel and his wife drove across the country collecting the money, keeping a share of it, and depositing the rest into various bank accounts. The law finally caught up with him, however, and he ultimately pleaded guilty to violating 18 U.S.C. § 1343, the wire fraud statute. Although the district court sentenced him to a below-Guidelines prison term of 38 months, Patel now contends on appeal that the sentence is too high. He argues that the court should have given him a minor-role reduction, that it should not have imposed a two-level upward adjustment

based on the substantial activity that took place outside the United States, and that it should have paid more attention to his primary mitigating arguments. Finding no error in any of those respects, we affirm.

# I

For more than seven months, Patel and his wife cruised around the United States picking up MoneyGram orders (*i.e.* electronic money transfers) that had been sent from the victims to fictitious people. The masterminds of the scheme were based in India; their identity appears to be unknown. Someone would call a potential victim and tell the person that he or she owed money—sometimes thousands of dollars—to the Internal Revenue Service. The caller would then tell the victim that arrest could be averted if he or she made a down payment on the alleged debt. Unfortunately, a significant number of people fell for the scam. They wired funds as instructed, and then Patel and his wife, using ID cards bearing Patel's photo but other people's names, collected the payments. They deposited most of the money into various bank accounts for the organizers of the scheme, and they kept 4% for themselves. As Patel admitted in his written plea agreement, from September 2016 to May 2017, he used at least 130 fake IDs to pick up over $1 million, in more than 1,000 transactions.

Patel's plea agreement also addressed sentencing. It acknowledged that the government would seek a two-level increase over his basic Guidelines level under U.S.S.G. § 2B1.1(b)(10) "(A) or (B)," because "a substantial part of the fraudulent scheme was committed from outside of the United States or the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." The Probation Office, citing only subsections (B) and (C) of § 2B1.1(b)(10), agreed with the government that the increase applied.

Patel objected, arguing that although part of the scheme was committed abroad, it was unclear that the foreign part was substantial enough to trigger the enhancement. The government responded that the case agents were in a position to testify that, based on their experience, a substantial part of the scheme was committed in India. It added that the schemers' conduct showed a greater level of planning and concealment than typical telemarketing fraud and so met the sophisticated means test.

Patel responded with an argument that he actually deserved a minor-role reduction under U.S.S.G. § 3B1.2(b), because he was a lowly courier who took direction from unknown bosses, received only a fraction of the proceeds, did not know who sent the money or where it ultimately went, and was easily replaceable. The government countered that Patel was an essential part of the scheme and that his full-time job was to

collect the money. He accomplished that task with fake IDs he had acquired on his own. The probation officer agreed with the government.

In a sentencing memorandum, Patel contended that, as an undocumented immigrant, he was easy prey for exploitation by the scheme's directors. He asked the court to consider a sentence of time served, given his lack of criminal history, his positive character traits, and the reality that he would be removed from the United States after his time in prison. Patel also urged the judge to consider articles reporting that sentence length does not deter people from committing crimes, especially white-collar crimes. He noted that the Sentencing Commission recently had proposed a first-offender Guideline, which also supported a lighter sentence. Pointing to a 2017 case involving nearly identical facts where the defendant received a 14-month sentence, Patel argued that in order to avoid unwarranted disparities, he too should receive something comparable.

At the sentencing hearing, Patel renewed most of his arguments. He also asked the judge not to impose the adjustment under § 2B1.1(b)(10) because the government did not ask for it in his wife's case and it was not used in the 2017 case. With respect to the minor-role reduction, Patel argued that his personal gain from the scheme paled in comparison to the victims' loss of over $1 million. Again analogizing himself to a drug courier, he conceded that he was essential to the scheme, but that a reduction was still appropriate because he was not a decision-maker.

The district court was not persuaded by Patel's arguments. On the topic of alleged disparities, it found the 2017 case unhelpful because the record did not reveal enough details to enable the court to assess how comparable it really was. The court did not mention the treatment Patel's wife received. As for the upward adjustment under § 2B1.1(b)(10), the court recognized that there were three possible bases that might support it: avoiding law enforcement (subpart (A)), substantial relevant conduct outside the United States (subpart (B)), or sophisticated means (subpart (C)). It stated that any of the three would have been proper. It opined that the scheme "clearly" involved sophisticated means, and "very well may have" fallen within subparts (A) or (B). "Perhaps not beyond a reasonable doubt," the judge said, "but no reasonable person would come away from this unfortunate scheme with the thought of anything other than it was hatched and perpetrated from afar." Finally, the judge rejected Patel's requested minor-role adjustment because of the amount of money he handled, his work in procuring the fake IDs, his efforts to route the money at multiple stages all over the country, and the full-time nature of his work. In the end, the court calculated a Guidelines range of 41 to 51 months' imprisonment.

Turning to the factors under 18 U.S.C. § 3553(a), Patel argued that he had lived a crime-free and productive life before committing this crime. He came to the United States, he said, with good intentions (though unlawfully), but without proper documentation he found it difficult to find work. Even though he had failed to persuade the judge to give a minor-role Guidelines reduction, Patel urged the judge to consider his relatively small role in the office under section 3553(a). He again called the judge's attention to the academic studies showing little connection between length of sentence and general deterrence. Finally, because he faced deportation after his sentence, Patel argued that his risk of reoffending was low.

The court settled on a sentence of 38 months' imprisonment, slightly below Patel's Guidelines range. It explained that, while Patel may have had good intentions upon arriving in the United States, he came illegally, he had a marginal employment record, he never filed tax returns, and he defrauded innocent people. Even if he did not retain much of the money, he handled all of it. Moreover, the court thought, both specific deterrence (of Patel) and general deterrence (of others) were critical. "The word has to go out," the court said, "like a shot across the bow that if you're going to come to this country and engage in this conduct" there will be "significant consequences." Patel, it concluded, "richly deserved" his sentence.

## II

Patel makes two general arguments on appeal: first, that the court erred in several respects when it calculated his advisory Guidelines range; and second, that the court mishandled the process under section 3553(a) by failing to address his principal grounds in mitigation. We address the Guidelines arguments first, and then the ultimate sentence.

In order to show that the district court erred by failing to award the minor-role reduction, Patel needs to demonstrate clear error. *United States v. Tartareanu*, 884 F.3d 741, 745 (7th Cir. 2018). This is a difficult standard for him, because "the sentencing court is in the best position to determine the role that a defendant had in the criminal activity." *United States v. Sandoval-Velazco*, 736 F.3d 1104, 1107 (7th Cir. 2013). Moreover, because Patel has the burden of establishing his entitlement to this adjustment, any gaps in the record cannot help him.

Despite Patel's best efforts to persuade us otherwise, we see no error—and certainly not clear error—in the district court's conclusions on this adjustment. Patel was no mere courier. In addition to driving across the United States to pick up fraudulently obtained money, he obtained more than a hundred fake IDs, which he used to deposit and route the proceeds. The analogy to a drug courier does not help

him either. We have rejected minor-role adjustments for couriers who have greater-than-average involvement in a drug conspiracy. *Sandoval-Velazco*, 736 F.3d at 1109; see *United States v. Rodriguez-Cardenas*, 362   F.3d 958, 959–60 (7th Cir. 2004). The number of IDs and the amounts of money that moved through his hands also gave him a good appreciation of the scope of the scheme. Also supporting the court's conclusion is the fact that Patel received a percentage of the earnings—a commission taken off the top, rather than a salary or a fixed fee. Finally, although the Guidelines suggest that a defendant's being "essential" to a scheme is not "dispositive," U.S.S.G. § 3B1.2 cmt. n.3(C), this implies that someone's necessity to the scheme is nonetheless a factor that the judge may consider.

Turning to the upward adjustment under § 2B1.1(b)(10), the record is a bit more confused than might have been ideal with respect to subpart (B) (foreign conduct), but in the end that does not matter. The court said that it was applying the adjustment because Patel "clearly" used sophisticated means to commit his crime and thus the criteria of subpart (C) were satisfied. The three subparts present alternative grounds for the enhancement; they do not impose cumulative requirements. Only after saying that it was relying on § 2B1.1(b)(10)(C) did the court go on to say that it could as well have relied on the foreign-conduct subpart. Patel waited until his reply brief to grapple with the court's sophisticated-means rationale, and so that issue is forfeited. We could stop here, but we add that on this record, we do not find any error in the sophisticated-means finding. We have no need to delve into the foreign-conduct option. We do not know what the prosecutors might have said, and we see nothing in this scheme that required foreign actors (although, had it been explored in greater detail, Patel would have had to deal with some damaging admissions). We do not know why the district court assumed that any reasonable person would spot this as something that was hatched abroad. A quick perusal of the Federal Reporter would show that there are plenty of home-grown fraudsters in the United States. But this cannot help Patel, given the solid finding under § 2B1.1(b)(10)(C).

We now turn to Patel's complaint that the district court failed to address his principal grounds for mitigation: his looming deportation, his lack of criminal history, his relatively minor role in the offense, and the ineffectiveness of general deterrence for white-collar criminals. None of these arguments required the court to say any more than it did.

The court acknowledged that Patel would be removed from the country after he served his sentence, but it nevertheless found that a prison sentence was important for its potential deterrent effects and to provide just punishment for Patel. See 18 U.S.C.

§ 3553(a)(2)(A), (B). Indeed, the court expressly commented that Patel's removal meant that he would not receive the added punishment of supervised release after incarceration. And if anything, the court saw Patel's unlawful entry into the United States as an aggravating factor indicating lack of respect for the law, and thus something supporting greater punishment.

Patel's lack of criminal history did not require further comment, because it was already built into the Guidelines range. *United States v. Ray*, 831 F.3d 431, 436 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 697 (2017). The judge also had no obligation to discuss the Sentencing Commission's debates about a possible amendment for first-time offenders.

As for the minor-role consideration, the judge had already said quite a bit in connection with his computation of the Guidelines range. That discussion reveals that the court had concluded that, even if Patel technically qualified for some kind of reduction, anything in addition to the slightly-below range sentence he received was unwarranted.

Finally, the court was under no obligation to discuss the articles Patel presented questioning general deterrence. These amount to an invitation to the court to disregard not only the Sentencing Guidelines, but section 3553(a) itself, which expressly recognizes deterrence as a factor to be considered. See 18 U.S.C.; § 3553(a)(2)(B). A court does not have to justify a decision to stick with the law as it presently stands.

### III

Patel took part in an extensive fraudulent scheme that harmed a great number of people. He pleaded guilty to that scheme and received a sentence slightly below the Guidelines range. We see no error here, and we thus AFFIRM the judgment of the district court.